All concur, except RUGER, Ch. J., and EARL, J., dissenting. Judgment reversed.

---

GEORGE W. CONSELYEA et al., Executors, etc., Respondents, v. DUDLEY BLANCHARD et al., Appellants.

Defendants S. and V. A. entered into a contract with the counties of K. and Q. to build a swing bridge with the B. & O'R. patent turn-table. The contract provided that in case of default on the part of the contractors, the joint committee of the two counties could take charge of and finish the work, deducting the expenditures from the contract-price. The contractors entered into a contract with B. & O'R., the patentees to furnish one of their turn-tables. S. & V. A. failed to perform their contract and refused further performance. B. & O'R. were ready and willing to perform, but were prevented from so doing by the default of S. & V. A. The joint committee took charge of the work, but B. & O'R. refused to furnish the turn-table, unless the committee assumed payment therefor. Thereupon an agreement was made between the committee and B. & O'R., by which the latter agreed to and did, in reliance upon the contract, furnish the turn-table and complete the work, the

counties agreeing to pay them the contract-price therefor, which was set apart out of the sum agreed to be paid to S. & V. A., who were to receive the balance. After S. & V. A. had so made default, they executed to plaintiff's testator orders upon the treasurer of the county of K., which amounted to equitable assignments, to the amount of $1,550, which were filed, and thereafter a similar order to defendants D. & B. for $1,000, and subsequent to this an order to B. & O'R. for $1,250, one-half the contract-price for the turn-table. In an action to determine the priority of liens, *held*, that B. & O'R. were entitled to a preference; that the fact that the orders were given did *not* deprive the counties of the right to take any action in good faith which they deemed proper and necessary to secure performance of the contract and protect their interest; that the $2,500 never became payable to S. & V. A., but only to B. & O'R. under the new agreement, and so that the other orders never applied or attached thereto; also, that it was immaterial that the bill against the counties was made out and audited in the name of S. & V. A.

Also *held*, that, as between plaintiffs and D. & B., the former were entitled to the preference, and this without regard to the question as to whether the moneys paid for the orders were used in the construction of the bridge or had any relation thereto; that it was sufficient that plaintiffs' orders were first given and were founded on a sufficient consideration ; also, that it was insufficient to give D. & B. the preference that when they furnished materials for the bridge, to pay for which the order was given, S. & V. A. promised to pay them out of the money which should become due to them; that such a promise did not operate as an equitable assignment or give an equitable lien on the fund.

(Argued June 14, 1886; decided October 5, 1886.)

APPEAL from judgment of the General Term of the Supreme Court, in the second judicial department, entered upon an order made February 10, 1886, which affirmed a judgment in favor of plaintiff, entered upon a decision of the court on trial at Special Term.

On the 11th day of December, 1880, the defendants Swift & Van Aken entered into a contract with the counties of Kings and Queens to build a swing-bridge over Newton creek, which separates those counties. The contract-price was $7,800, one-half of which was to be paid by each county. The turn-table of the bridge was to be the Blanchard & O'Rourke patent turn-table. The contract also contained the following provision: "Should at any time during the progress of the work the engineer be of the opinion that the work is being un-

necessarily or unreasonably delayed, or that the contractor is willfully violating any of the conditions of this specification, and shall certify so in writing, then the committee shall have the power to notify the contractor to discontinue all work or any part thereof under this contract. And thereupon the said contractor shall discontinue said work or such part thereof as the engineer shall designate, and the committee shall thereupon have the power to purchase, by contract, or otherwise, as they may deem advisable, such quantity of material and to employ such labor and to use such material as they may find upon the line of such work and to do any work that may be necessary to fulfill this contract, or such part thereof as may be deemed necessary and to charge the cost of such labor and material to the contractor, and the expense so charged shall be deducted out of such moneys as may be then due, or at any time thereafter become due, the contractor under this contract."

Swift & Van Aken entered upon the performance of the contract, and after they had made some progress therewith they were paid by the two counties $3,000. Afterward, before the completion of the contract, they gave orders upon the county treasurer of Kings county, sufficient in form to operate as equitable assignments, which orders were dated and filed at the times mentioned below: To William Conselyea for $950, dated Oct. 8, and filed Oct. 10, 1881; to the same for $600, dated Oct. 11, and filed Oct. 15, 1881; to Drew & Bucki, for $1,000, dated and filed Oct. 20, 1881; to Blanchard & O'Rourke for $1,250, dated Dec. 28, and filed Dec. 29, 1881.

Thereafter the bridge was completed and accepted by the two counties and the sum of $4,000 remained due from them for the construction thereof, one-half thereof from each county. The county treasurer of Kings county was willing and ready to pay the $2,000 to the persons entitled thereto.

This action was commenced in May, 1882, by William Conselyea, since deceased, and the plaintiff claimed priority of payment out of the sum of $2,000, due from Kings county, for the reason that his orders bore the earliest dates and were first filed with the county treasurer; and he prayed judgment that

the county treasurer be restrained from paying any part of the sum to either of the other defendants, and that he be ordered first to pay the sum of $1,550, the amount of his two orders, to him.

The defendants, the firms of Blanchard & O'Rourke and Drew & Bucki, both answered, each claiming priority of payment out of the fund in the hands of the county treasurer.

The trial court ordered judgment that Blanchard & O'Rourke be first paid the sum of $250 out of the fund; that the plaintiffs, who had been substituted in the place of William Conselyea, deceased, be next paid the sum of $1,550, and that the balance of $2,000 be paid to Drew & Bucki.

Further facts appear in the opinion.

*James Troy* for appellants Blanchard & O'Rourke. Blanchard & O'Rourke were not in default, because they were obstructed in performing their work by Swift & Van Aken. (*Weeks* v. *Little*, 11 Abb. N. C. 415; *Stewart* v. *Kelteltas*, 36 N. Y. 388; *Howell* v. *Gould*, 2 C. A. D. 418.) When Swift & Van Aken refused absolutely to proceed further with their contract, upon the performance of which the contract of Blanchard & O'Rourke depended, the latter, acting on this violation, rescinded the contract on their part, and such rescission was in fact and in law an end of the contract between Blanchard & O'Rourke and Swift & Van Aken, and neither party thereafter could sue the other thereon. (*Bigler* v. *Morgan*, 77 N. Y. 312; *Morris* v. *Rexford*, 18 id. 557; *Battle* v. *Rochester C. Bk.*, 3 id. 88; *Murray* v. *Harway*, 56 id. 336; *Bowen* v. *Mandeville*, 95 id. 237.) The consent of Swift & Van Aken given to the joint board, who represented the counties, that Blanchard & O'Rourke should be paid, was entirely independent of the arrangement between the counties and Blanchard & O'Rourke, and was for the protection of the counties mainly. Blanchard & O'Rourke having performed their contract with the counties are entitled to be paid. (*Gallagher* v. *Nichols*, 17 Abb. 337; *S. C.*, 60 N. Y. 438; *Devlin* v. *Woodgate*, 34 Barb. 252; *Tallman* v. *Bressler*, 64 id. 360.

*Tunis G. Bergen* for appellants Drew & Bucki. The drawee in this case being a public officer, a formal acceptance was not necessary, but from the time of filing, the treasurer became the trustee for the payee. (*People* v. *Comptroller*, 77 N. Y. 48 ; *Hall* v. *Buffalo*, 1 Keyes, 193 ; *Field* v. *Mayor, etc.*, 2 Seld. 179.) In cases of valuable consideration and equal equities between the different claimants for the same fund in equity, priority of time should govern. (*Alger* v. *Scott*, 54 N. Y. 14 ; *Tallman* v. *Hoey*, 89 id. 537 ; Pomeroy's Eq. Jur. 455.) On grounds of public policy the courts should protect those who render such service as against those who simply buy an order on such a fund. (*Bliss* v. *Lawrence*, 58 N. Y. 442 ; *Stover* v. *Eyclesheimer*, 3 Keyes, 620.)

*J. Stewart Ross* for respondents. The orders delivered to plaintiff's testator by the defendants Swift & Van Aken, for a valuable consideration, were assignments *pro tanto* of the fund to which they referred, and, after the orders were filed with the county treasurer, he was bound to apply the fund as it accrued to the payment of the orders and to no other purpose. (*Brills* v. *Tuttle*, 81 N. Y. 454 ; *People, ex rel. Dannat*, v. *Comptroller*, 77 id. 45 ; *Att'y-Gen'l* v. *L. Ins. Co.*, 71 id. 325 ; *Munger* v. *Shannon*, 16 id. 251 ; *Parker* v. *Syracuse*, 31 id. 376 ; *Muir* v. *Schenck*, 3 Hill, 228 ; *Greentree* v. *Rosenstock*, 61 N. Y. 583 ; *French* v. *M. & T. Bk.*, 76 id. 352.) To constitute a valid parol assignment of a chose in action there must be a delivery of the thing assigned. (1 Pars. on Cont. 228, 229 ; *Hooker* v. *Eagle Bk.*, 30 N. Y. 87.) A valid consideration is required by the authorities to give validity to an equitable assignment. (*Tallman* v. *Hoey*, 84 N. Y. 539 ; *Jones* v. *Mayor, etc.*, 90 id. 387.)

EARL, J. The only claim the plaintiffs have to share in the fund in controversy and to have priority therein is based upon the two orders taken by their testator, for the first of which he paid $850, and for the second of which he paid $595. There was no evidence that the money thus advanced bore any rela-

tion to, or had any connection with, the bridge or its erection, and the plaintiffs claim priority of payment solely on the ground that these orders are prior in date to the other orders.

Blanchard & O'Rourke base their claim to priority of payment upon facts found by the judge at Special Term as follows: They were the owners of a certain patent for the construction of bridge turn-tables, which were known and designated as "Blanchard & O'Rourke patent turn-tables," and as such patentees they had the exclusive right to construct and use such turn-tables; and Swift & Van Aken by their contract with the two counties were bound to furnish such a turn-table. For the purpose of performing their contract with the counties, Swift & Van Aken entered into contract with Blanchard & O'Rourke to furnish, supply and erect one of these turn-tables for the price of $2,500, $2,000 of which was to be paid when the turn-table should be complete, in running order and accepted as such, and the balance of $500, when the bridge should be accepted by the counties. By the contract of Swift & Van Aken with the counties it was provided that the work on the bridge should be commenced within ten days and finished within sixty days after the completion and delivery of the central pier, and if there was delay beyond that time, they agreed to pay as liquidated damages to the counties, the sum of $50 per day for every day of such delay, the amount to be retained from the contract-price stipulated to be paid by the counties. By the contract between Swift & Van Aken, and Blanchard & O'Rourke, it was provided that the turn-table should be completed within the time specified for the completion of the bridge. After the making of the two contracts mentioned, and in or about the month of July, 1881, the central pier for the bridge having been completed and delivered, Swift & Van Aken entered upon the performance of their contract, and in that month, after doing some work thereon, they refused to proceed further under their contract until a payment was made to them which they were not entitled to, as the engineer in charge on behalf of the counties refused to certify therefor; whereupon the joint committee of the

two counties, duly authorized thereto, took entire charge of the supervision of the work, and the engineer ceased to act further; and the committee on the twenty-first day of July, for the purpose of inducing Swift & Van Aken to proceed with the work, although nothing was actually due them under the contract, reported a resolution to the boards of supervisors of the two counties recommending a payment of $3,000 to them on their contract, which sum was paid on such recommendation by the counties. On the reporting of such recommendation by the committee, Swift & Van Aken resumed work on the bridge, and on the passage of the resolution to make the payment recommended they again ceased work. When such sum was paid to them they again resumed work on the bridge, and immediately thereafter again ceased work and left the bridge unfinished and thereafter absolutely failed and refused to proceed any further with the work or to complete their contract. Blanchard & O'Rourke duly proceeded with the erection of the turn-table and performed their contract in respect thereto, so far as the condition of the work to be performed by Swift & Van Aken permitted; but they were unable to fully complete and erect the turn-table for the reason that Swift & Van Aken had not, when they ceased to work, progressed to an extent sufficient to enable them to complete the same or further proceed therewith. Although they repeatedly demanded and required Swift & Van Aken to proceed with the erection of the bridge so as to permit them to proceed with the erection of the turn-table, they continually refused so to do, and in violation of their contract, hindered, delayed and prevented them from finishing the turn-table and completing their contract. Swift & Van Aken were thus in default from July to October, 1881, and Blanchard & O'Rourke were not, at any time, in default. In the month of October, while Swift & Van Aken were thus in default, there was a meeting of the joint committee at which Swift & Van Aken refused further to perform their contract and declared their inability so to do, and their intention absolutely to abandon the performance thereof. Whereupon Blanchard & O'Rourke notified the committee that they would not

proceed with the building of the turn table, unless payment of the amount which they were to receive therefor should be assumed by the committee and thus secured to them; and they being then and there in possession of the work and material already used by them in the building of the turn-table so far as the same had progressed, declared their intention, unless so secured, to remove the materials and not to furnish the counties with the turn-table or to permit the construction or use thereof. Whereupon the committee having full power and authority so to do requested them to erect the turn-table, and promised and agreed that on the completion thereof the counties would pay them the sum of $2,500; and then and there, with the consent and concurrence of Swift & Van Aken, that sum was reserved, set apart, assigned and appropriated from the amount still unpaid to Swift & Van Aken under their contract with the counties to and for the payment of Blanchard & O'Rourke on the completion of the turn-table; and the boards of supervisors of the two counties thereafter duly ratified the agreement. Blanchard & O'Rourke, relying upon the agreement thereupon agreed to proceed with the work, and did accordingly thereafter finish and complete the same. Swift & Van Aken did not thereafter proceed with the contract with the counties and no money ever fell due to them thereunder except as hereinafter stated. Blanchard & O'Rourke with the consent of Swift & Van Aken finished the contract of the latter with the counties and permitted them to have the ultimate benefit thereof and to receive the amount unpaid on the contract after first deducting the amount of $2,500 so appropriated, assigned and set apart for paying for the turn-table. On the 29th day of December, 1881, the committee, in pursuance of the agreement to pay Blanchard & O'Rourke for the turn-table on the completion thereof, and for the purpose of carrying out the agreement, duly certified to the boards of supervisors that the sum of $5,000 was due to Swift & Van Aken on account of their contract, one-half thereof payable by each county; that $1,250 of the same was to be paid by each county to Blanchard & O'Rourke before any other sum should be paid to any other

person, and that the balance, $750, was to be paid by each county to Swift & Van Aken. The boards of supervisors severally adopted resolutions of the same tenor and effect. On the twenty-eighth day of December, Swift & Van Aken delivered to Blanchard & O'Rourke an order on the treasurer of Kings county requesting him to pay them the sum of $1,250 out of any moneys due or to grow due on their contract, which order was filed with the treasurer on the next day. That order was so given in furtherance of the agreement made between the joint committee and Blanchard & O'Rourke with the consent and concurrence of Swift & Van Aken, and it and the bill presented therewith, and the auditing thereof and other proceedings in relation thereto were resorted to and had in compliance with the agreement, and were mere matters of form resorted to and adopted for the purpose of obtaining the money in the usual and most expeditious way under the agreement and not otherwise, and were in no way intended to impair the rights of Blanchard & O'Rourke to the money under the agreement.

The trial judge not only found the foregoing facts, but he also found as conclusions of law, that there was nothing due to Swift & Van Aken from the counties under their contract with them at the time they gave any of the orders involved in this action; that the counties and Swift & Van Aken had the legal right, at any time during the existence of the contract between them, to alter, modify or change the same in any way, provided it was done in good faith and without intent to defraud; that the agreement made between the committee and Blanchard & O'Rourke and Swift & Van Aken was made in good faith and for the best interest of the counties and of the other parties thereto, and was in all respects a valid and essentially necessary change and modification of the original contract; that at the time of making such change and modification of the contract, Swift & Van Aken were in default in performance thereof, and then and there refused to proceed therewith or further to perform the same; that such refusal and the consent of Swift & Van Aken then given to the agreement between

the counties and Blanchard & O'Rourke were a waiver of the notice required to be given to Swift & Van Aken under their contract on their failure to proceed therewith with reasonable diligence ; that on such refusal and waiver the committee had the right and power, on behalf of the counties and under the contract between them and Swift & Van Aken, to proceed with and procure the erection of the turn-table and charge the expense thereof to Swift & Van Aken and deduct such expense from the moneys yet unpaid on the contract; that Swift & Van Aken unreasonably hindered, delayed and prevented Blanchard & O'Rourke in the erection and completion of the turn-table in violation of the contract between them ; that Blanchard & O'Rourke did not at any time or in any way violate the terms of such contract ; that on such violation of the contract by Swift & Van Aken, Blanchard & O'Rourke had the legal right to abandon their contract and absolutely refuse to proceed further therewith, and also to remove and retain such materials as were still undelivered by them and were in their possession or under their control, and refuse to permit the further construction or the use of their patent turn-table ; that without such turn-table the bridge could not be built or used as planned and projected; that Blanchard & O'Rourke had the right to make the agreement above mentioned with the counties, and the agreement was ratified and confirmed and was in all respects valid and binding on the counties and on Blanchard & O'Rourke, and was and is unaffected by the former contract between them and Swift & Van Aken.

If some findings of fact are more favorable to Blanchard & O'Rourke than others, they have the right upon this appeal to claim the benefit of those which are most favorable to them, and so we have repeatedly held. (*Schwinger* v. *Raymond*, 83 N. Y. 191; *Bonnell* v. *Griswold*, 89 id. 122.)

It is impossible for us to perceive how, upon the facts found, a conclusion adverse to the claim of Blanchard & O'Rourke can legally or justly be reached.

The orders taken by Conselyea and by Drew & Bucki did not operate as assignments of any money then due, as none was

then due under the contract. They operated as assignments of money which was expected to become due, and which might become due under the contract. If after they were given, by the default of Swift & Van Aken, or, by force of provisions contained in the contract, no money should become due to Swift & Van Aken, the orders would become inoperative. The fact that the orders were given did not deprive the counties of the right to take any action in good faith under the contract which they deemed proper and necessary to secure its performance and to protect their interests. The orders did not bind them except as to payments which might become due to Swift & Van Aken under the contract.

Before any money was earned or paid under the contract and before the orders were given, the engineer employed by the counties was discharged, and the joint committee assumed the supervision and direction of the work under the contract, and by the consent of Swift & Van Aken were substituted in his stead. After Swift & Van Aken had for some time been in default in their performance of the contract, they declared their inability to further perform, and absolutely refused further performance. Then the counties had the right to make any arrangements they could for the completion of the bridge and deduct the expenses to which they should be subjected from the price stipulated in the contract. With the assent of Swift & Van Aken they agreed with Blanchard & O'Rourke that they should complete the bridge, and that if they would do so they would pay them the $2,500 which they were to have for the turn-table. At that time Blanchard & O'Rourke were absolved from further performance, and they had the right to remove all their materials, and thus the bridge could not have been completed as planned. Relying upon the promise of the counties they resumed work, completed the contract of Swift & Van Aken and their own contract, and gave the counties the benefit of their patent turn-table. The $2,500 never became payable to Swift & Van Aken, but became payable only under the new agreement, and thus the orders given to Conselyea and to Drew & Bucki never applied or attached

thereto. The effect of the agreement was to procure the performance of Swift & Van Aken's contract, but at an expense to the counties of the $2,500 which they agreed to pay and were bound to pay, and which they could deduct from the contract-price. It matters not what form the subsequent transactions between the counties and Swift & Van Aken took. The order was given to Blanchard & O'Rourke, and the bill against the counties was made out and audited in the name of Swift & Van Aken; but all this was done to carry out the new agreement which had been made, and without any intent to affect in any way the rights of Blanchard & O'Rourke thereunder.

The court below held that Blanchard & O'Rourke were entitled to priority of payment only for the sum they expended in the completion of the contract of Swift & Van Aken after the new agreement, and as that sum was $500, one-half payable by each county, that they could have priority only for $250, on the fund now in question. But that is only a partial view of the case. They had the right to remove all their materials and to absolutely refuse to construct and put up the turn-tables, and in consideration of the new agreement they left their material, gave the counties the benefit of their turn-table and expended the $500. For all of this they were entitled to have the $2,500 promised to them.

Therefore we are of opinion that Blanchard & O'Rourke were first entitled to have $1,250 out of the $2,000 held by the treasurer of Kings county.

For the purposes of this appeal we might stop here. But with the view to the new trial, something more may with propriety be said as to the rights of priority as between the plaintiffs and Drew & Bucki. The latter claim priority of payment over the plaintiffs because the materials they furnished for which the order was given to them were actually used in the construction of the bridge, while there is no proof that the money paid by Conselyea was in any way used in the construction of the bridge or had any relation thereto. This claim is not well founded. It is sufficient that plaintiffs' orders were

founded upon a sufficient consideration. That made them effectual as assignments. While the money paid was not actually used upon the bridge, it might have been used to support the assignors or to keep off their creditors, or to maintain their credit while they were engaged in the performance of their contract. It might be a very embarrassing inquiry to trace the connection which money thus advanced could have with the performance of any contract. Its relation to the contract might be very remote and yet just as useful as if actually used in its performance. If courts should enter upon the inquiry to which we are invited by Drew & Bucki, they would have very embarrassing equities to adjust and great uncertainty would nearly always attend such assignments. Suppose money or materials were advanced or furnished to be used in the performance of a contract, but were not actually thus used or only so used in part, and orders were taken for the consideration thus furnished sufficient in form to operate as equitable assignments ; how under the rule claimed by Drew & Bucki could the equities of several assignees be adjusted ? We think the wiser rule is to treat all assignments of the kind we are now considering, founded upon sufficient considerations, as standing upon the same footing, and we find no case which sanctions any other rule.

Drew & Bucki claimed that they obtained an order from Swift & Van Aken in June, 1881, before any of the other orders were given which was filed with the county treasurer and mislaid or lost, and that their present order, dated October 20, 1881, was taken for the same amount in the place of the former one, and they gave evidence tending to sustain this claim. But there was no finding, or request to find, in reference to the former order. If, upon the new trial, they can satisfy the court that such an order was given, and that the last order was given as a substitute for that, then they will be in a position to claim priority over the plaintiffs.

It will not be sufficient for Drew & Bucki to prove that at the time they furnished these materials, Swift & Van Aken promised to pay them out of the money which should become

due to them upon the bridge contract. Such a promise does not operate as an equitable assignment of the fund or give an equitable lien thereon. ( *Williams* v. *Ingersoll*, 89 N. Y. 508, 518.)

We are, therefore, of opinion that the judgment should be reversed and a new trial granted, costs to abide the event.

All concur.

Judgment reversed.