(16 Misc. Rep. 359.)

MASON STABLE CO. v. LEWIS.

(Supreme Court, Appellate Term. First Department. March 23, 1896.)

1. LIEN—OF LIVERY STABLE KEEPER—NOTICE.
Where defendant had notified plaintiff that the horse no longer belonged to her, and she would not be responsible for its keep, it became the duty of the plaintiff to enforce his lien, or otherwise assert his legal rights, within a reasonable time, and not needlessly permit damages to grow.

2. APPEAL—REVIEW—FINDINGS OF TRIAL COURT.
In an action to enforce a livery stable keeper's lien, where there was evidence tending to show that defendant had notified plaintiff that she would no longer be responsible for the keep of the horse, the statement by the trial court, as one of the reasons for its decision, that notice, even

if given, did not terminate defendant's liability, is an implied finding of fact, to which exception may be taken on appeal.

Appeal from city court, general term.

Action by the Mason Stable Company against Margaret Lewis to enforce a livery stable keeper's lien. There was judgment for plaintiff, and defendant appealed. Reversed.

For former report, see 35 N. Y. Supp. 1111.

Argued before DALY, P. J., and McADAM and BISCHOFF, JJ.

Coleman & Donohue, for appellant.

Cannon & Atwater, for respondent.

McADAM, J. The action was to foreclose a livery stable keeper's lien, under chapter 91 of the Laws of 1892, for the care and keep of three horses belonging to the defendant. The defendant admitted that she was the owner of two of the horses, and that they had been kept and cared for by the plaintiff at her request. The contention was over the third horse (designated for convenience the "Doyle Horse"); the defendant denying that it was her property, or that it was kept or cared for by plaintiff at her request. It was admitted that the defendant had bought the horse from Doyle & Cook on December 2, 1892, had sent it to plaintiff's stable to be kept and cared for, and that plaintiff had kept and cared for it during the period claimed. About three weeks after defendant had the Doyle horse taken to plaintiff's stable, the horse ran away, and the defendant requested Doyle & Cook to take it back, but they declined. Defendant's coachman was directed to take the horse back to Doyle & Cook, and he attempted to do so; but, instead of taking it to their stable, he left it in another stable, on the same street. Mr. Doyle, learning the next day that the horse had been left at this stable, sent a boy to take it to the plaintiff's stable. The boy took it there, and said he had a horse for Mr. Lewis, whereupon Mr. Winthrop, who was then in charge of the plaintiff's establishment, sent for the Lewis coachman, who came and took the horse, and put it in one of the stalls of the plaintiff's stable. The plaintiff proved that its officers did not know of the attempted return of the horse to Doyle & Cook, or that they had sent it back. The defendant brought an action against Doyle & Cook, alleging they had sold her a horse, and warranted it to be sound and kind; that she had paid them $400; and that the warranty proved untrue, to her damage of $400, which she sought to recover. Mr. and Mrs. Lewis testified that they saw Mr. Mason, of the plaintiff company, shortly after the Doyle horse was returned to the plaintiff's stable; that they told him the horse did not belong to them, that they had returned it to Doyle & Cook, that the plaintiff should look to that concern for the stabling of the horse, and that Mrs. Lewis would never pay it. It was certainly understood at that time, if not before, that the defendant had taken the horse away from the plaintiff's stable, and put it in another, for the purpose of returning it to the vendors, and that the defendant did not intend, by any act of hers, to acknowledge that the horse,

after such return, was her property. She was willing to pay the bill up to the time the horse was returned to Doyle & Cook, but persisted that, if the plaintiff kept the horse after the notice given by her, it was not to be on her account. The plaintiff kept the animal for some eight months thereafter, and undertook to hold the defendant for the care and keep during the entire time it remained in its possession.

The notice given by the defendant required the plaintiff to enforce its lien, or otherwise assert its legal rights, within a reasonable time thereafter; for it was the plaintiff's duty, when informed of the situation, not to needlessly permit the damages to grow. Field, Dam. § 126; 1 Suth. Dam. 148; Clark v. Marsiglia, 1 Denio. 317. There was evidence in the case negativing the giving of the notice, but the trial judge seems to have regarded the notice as of no importance whatever, for in his decision he says:

"Notice, even if given by Mrs. Lewis to Mason the same day, that she would not be responsible for the horse's keep, and containing a request that Mason return the horse, was not sufficient to end the liability incurred on her behalf by her coachman, as Mason was under no duty to take the active step of returning the horse."

Assuming that the plaintiff was under no obligation to return the horse to Doyle & Cook, the request to do so did not detract from the effect of the express notice that the horse did not belong to the defendant, and that she would no longer be responsible for its board. The legal effect of this notice was to impose upon the plaintiff the duty of bringing the relation between the parties to a close in some form which would save either from unnecessary loss; otherwise the plaintiff might have suffered the damages to go on until it suited its convenience to determine the amount which the defendant eventually should pay. There is no such accommodating rule of damages.

Where there are no findings the Code (section 1022) requires the court to "file a decision stating concisely the grounds upon which the issues have been decided." One of the reasons assigned by the trial court for its decision was that the notice, even if given, did not terminate the defendant's liability, and it was accordingly treated as an immaterial circumstance in the case. This was error. The respondent insists that there is no finding that notice was given. Although not found in express terms, the language used leans directly to the implication that notice was given, but for some reason it was not pertinent to the question of continuing liability. The rule under the practice as to separate findings was that, where they were irreconcilable or ambiguous, the appellant had the right to claim the benefit of those most favorable to him. Conselyea v. Blanchard, 103 N. Y., at page 231, 8 N. E. 490; Redfield v. Redfield, 110 N. Y., at page 673, 18 N. E. 373; Green v. Roworth, 113 N. Y., at page 467, 21 N. E. 165. Logically, the same rule applies to grounds assigned for a decision under the prevailing practice. If the trial judge intended to find for the plaintiff on the conflict as to the giving of notice, he should have said in his decision that no notice had been given, or omitted refer-

ence to the subject, leaving the appellate court to infer everything in favor of the conclusion reached.

For the reasons stated the judgment must be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.