AUGUSTINE SPENGLER ET AL. v. STILES-TULL LUMBER COMPANY.

[48 South. 966.]

1. CONTRACTS. *Construction.*

In construing a contract all of its provisions must be considered.

2. SAME. *Contemporaneous construction by parties.*

The contemporaneous construction, placed on an instrument of writing by the parties, is entitled to much weight in determining its intent and purpose.

3. SAME. *Assignment. Building agreement.*

A person who contracts to erect a building for another has the right to assign the money due or to become due to him from the owner on the contract.

Syllabus.

4. SAME. *Same. Assent of debtor. Necessity.*

The assent of the owner to an assignment by a building contractor of the money due and to become due on the contract is not essential to the validity of the assignment.

5. MECHANIC'S AND MATERIALMAN'S LIEN. *Assignee of contractor. Subcontractors. Materialmen. Laborers. Code 1906, § 3074. Priority of liens.*

Under Code 1906, § 3074, giving to subcontractors, materialmen and laborers a lien on the amount due by the owner to the contractor upon their giving notice to the owner, an assignee of the principal contractor has the prior right to the fund as against subcontractors, materialmen and laborers serving notice after the assignment.

6. SAME. *Assignment of principal contract. Effect.*

Where a building contractor transferred to a third person the balance due under the contract to secure advancements to aid in the construction of the building, and thereafter the owner paid the sums due on the contract to the assignee, the transfer was an assignment of the funds due and to become due under the contract, but not of the contract itself, and the assignee occupies no relation towards persons furnishing material and labor in the construction or completion of the building.

7. SAME. *Same.*

That the assignee of a building contractor, to whom the balance due and to become due from the owner had been transferred, consented to materialmen and laborers furnishing material and labor in the construction of the building did not affect his rights under the assignment.

8. SAME. *Same.*

The right of a subcontractor, materialman or laborer, under Code 1906, § 3074, to a lien on the amount due from the owner to the principal contractor on giving notice to the owner as provided in the statute, is defeated by a *bona fide* assignment by the contractor of the balance due and to become due under the contract, made before the service of such notice, although the assignee did not give them notice of the assignment.

9. SAME. *Same. Contractor's outside creditor.*

An assignment by a building contractor of the balance due and to become due under the contract for a debt due to the assignee from the assignor, not growing out of the construction of the building, is good as against subcontractors, materialmen and laborers subsequently serving notice on the owner.

From the circuit court of Madison county.

Hon. Wiley H. Potter, Judge.

The Stiles-Tull Lumber Company and others, appellees, were plaintiffs in the court below; Augustine Spengler, and another, appellants, doing business under the copartnership name, A. & S. Spengler, were defendants there. From a judgment in plaintiffs' favor defendants appealed to the supreme court.

The opinion of the court in response to the suggestion of error fully states the facts.

*Brunini & Hirsh,* for appellants.

The principal question for determination is:

Has one, to whom a contractor has given a written assignment of moneys due and to become due under a contract for the construction of a building, and who has given notice of such assignment to the owner of the building, a right to such moneys prior to the rights of subcontractors and material men who, thereafter, give such owner notices of their claims against the contractor or materials furnished for, or labor performed on, the building?

It is apparent that Code 1906, § 3072, applies where the owner does not let the entire contract to one person, but gives, to illustrate, the brick work to one person, the woodwork to another, the plastering to a third, the roofing to a fourth and the painting to a fifth. In such case all are original contractors and not subcontractors; and, under the code section, each has a concurrent lien.

Whatever claim appellees have to the fund in court must be asserted, if at all, under Code 1906, § 3074, because Jaffray was the contractor while appellees were subcontractors and sub-material men.

Appellants, A. & S. Spengler, were not the assignees of the contract but were simply the assignees of the money due and to become due under the contract. They therefore did not stand in the same relation to the subcontractors, appellees, as did the

contractor Jaffray. If the assignment to appellants had embraced the contract, then they would have stood, so to speak, in the shoes of Jaffray, and appellees would undoubtedly have had a prior right to the fund in court.

In placing an interpretation upon our law by the aid of decisions of the appellate courts of other states, it will be well to observe that while in the main the statutes of the various states are the same in general policy yet, in many essentials, they differ widely. Judicial precedent is serviceable in furnishing canons of interpretation and analogies to aid and direct judicial inquiry; but when the statutes are essentially different its assistance extends no further. The inquiry at last is, in every case in any state, what is the legislative intent as expressed in the statute of the state. 20 Ency. Law (2d ed.), 268.

An examination of Code 1906, § 3074, will disclose the fact that the subcontractor or sub-material man has no lien nor has he any way of creating one. All that he can do to protect his interest is to give notice in writing to the owner of the building stating the amount due him by the contractor for work done on, or materials furnished in, the building; and this notice thereupon will "stop" any amount in the hands of the owner due to the contractor. It will be observed that the subcontractor is given no lien on the property. Until the subcontractor serves the owner with the specified notice the subcontractor remains merely an ordinary creditor of the contractor. The owner can disregard him absolutely until the notice is served.

Our statute on this subject is the same as what is known as the New York system, which is distinguished from the Pennsylvania system, which latter system gives the subcontractor or sub-material man a direct lien. The plan adopted in New York does not secure to any one except the original contractor an absolute lien on the property for the whole sum due, but by a species of equitable subrogation allows the subcontractor or sub-material man to give a written notice to the owner stating the particulars of the unpaid claim and requiring the owner

thereupon to retain such funds as were in his hands belonging to the contractor to abide the results of proper proceedings. 27 Cyc. 89.    Under statutes which follow the Pennsylvania system a subcontractor or sub-material man is entitled to a direct lien for what he has done or furnished without regard to any rights of the contractor.    27 Cyc. 90.

From the foregoing it will be perceived that the Mississippi statute law on the subject is fashioned after and similar to the New York system.    In some of the states it will be found that at one time the New York system prevailed, and at another time the Pennsylvania system was in force; hence, in reviewing the decisions of our sister states it is well to note the foregoing.

We refer to the following decisions of the New York appellate courts throwing light upon the matter: *Stevens v. Ogden,* 130 N. Y. 182, 29 N. E. 229; *Brill v. Tuttle,* 81 N. Y. 454, 37 Am. Rep. 515; *Conselyea v. Blanchard,* 103 N. Y. 222, 8 N. E. 490; *Lauer v. Dunn,* 115 N. Y. 405, 22 N. E. 270; *McCorkle v. Herrman,* 52 Hun, 610, 117 N. Y. 297; *Bates v. Salt Springs National Bank,* 157 N. Y. 322, 51 N. E. 1033; *Beardsley v. Cook,* 143 N. Y. 143, 38 N. E. 109.    See also *Binns v. Slingerland,* 55 N. J. Eq. 55, 36 Atl. 277; *Superintendent, etc., v. Heath,* 15 N. J. Eq. 22; *Lannigan's Admr. v. Bradley,* 50 N. J. Eq. 201; *Hall v. Banks,* 79 Wis. 299, 48 N. W. 385; *Copeland v. Manton,* 22 Ohio St. 398; *Board of Education v. Duparquet,* 50 N. J. Eq. 234, 24 Atl. 922; *Tollhis v. James,* 25 Ohio L. Jour. 277.

The lien of a subcontractor is defeated by an assignment of the claim due from the owner of a building erected under contract with the original contractor, made in good faith before the notice of the lien is served, although the owner knew when he paid the assignee that the subcontractor held unpaid claims. *Dorestan v. Kreig,* 66 Wis. 604; *Hall v. Banks, supra.*

Now, let us advert to the decisions of our own state. It has been well settled that a plain interpretation of Code 1906, § 3074, gives no lien to the subcontractor.    *Holmes v. Shands,*

27 Miss. 40; *Rivers v. Mulholland,* 62 Miss. 766. And where a written notice of a claim to the fund by laborers has been served subsequently to the writ of garnishment, the garnishment being first in time is also first in right. *Herrin v. Warren,* 61 Miss. 509. This last cited decision is absolutely decisive of the question here in issue. If the notice by garnishment be good as against "stop" notices of laborers upon what reasoning can it be held that an assignment with notice is not good as against a "stop" notice of a subcontractor?

We cite the case of *Peck-Hammond Company v. Williams,* 77 Miss. 824, 27 South. 995, as also decisive of and controlling this issue. The facts in this case are in substance as follows: One Wedgworth was a contractor having charge of the erection of a municipal school building, and when he had halfway completed the building there remained only about $8,000 due to him by the municipality on the contract price. Wedgworth then executed an assignment of all moneys due and to become due to him under the contract, in favor of one Mrs. Williams in settlement of certain debts due to Mrs. Williams for material furnished by her in the construction of the building. Wedgworth continued to construct the building and to draw money from the municipality to pay for labor and to buy material for the unfinished building, and in all other ways he exercised full authority and contested the assignment on the ground that the advertisement by the owner (municipality) in the newspapers had stated that the successful bidder for erection of the building would be required to secure the payment of all labor and material employed in the construction of the building. The right of the contractor Wedgworth to make the assignment to Mrs. Williams was not at all called in question by learned counsel for the Peck-Hammond Company. It seems to have been admitted by counsel for the parties that the assignment would in law be valid against the Peck-Hammond Company if the aforesaid advertisement did not affect its validity. This appellee court held that, as Wedgworth's assignment to Mrs. Williams was shown to be

valid, the acts of the contractor Wedgworth, after the assignment did not affect its validity. This appellate court held that, the contract with the municipality for payment of labor and material men was intended obviously to operate to protect the owner, the municipality, and in no way affected the right of the assignee, there being no contest between the owner and the assignee.

We know of no law in Mississippi by which assignments of the kind here in controversy are declared to be void or unforceable. There is nothing in Code 1906, § 3074, which prohibits or prevents a contractor from exercising his common law right of assigning what is due him or what is to become due to him. Until our legislature changes the statute law assignments of this nature will continue to be recognized and enforced by our courts.

Appellants secured the assignment to protect them in their advances, gave notice the same day to the owner, and they thereby acquired a prior right to the fund as compared with appellees who served their notices subsequently. While appellants obtained a preference, this was nothing more than what the appellees were severally endeavoring to do when they each filled their notices under Code 1906, § 3074.

Appellants' claim was for money and material which went into the building just as the claims of appellees are likewise for material and labor for the building. Certainly appellants claim must stand irrespective of the assignment and the mechanic's lien law, with equal merit to be paid out of the proceeds for the construction of the building as the claims of appellees. But for the advances made by appellants to the contractor the contractor could not have successfully carried on his work.

*H. B. Greaves,* for appellees.

The appellees, all of whom are either subcontractors or material men, are attempting to enforce their rights and establish their liens, as directed by Code 1906, § 3074, against any funds of the original purchase price still in the hands of Cameron, the

owner. In no state of case can the judgment of the court below
be disturbed in so far as it relates to the claims of two of the
appellees, to wit, the Stiles-Tull Lumber Company and Morri-
son Brothers. It is to be noted that the amount of money ad-
mitted by Cameron to be due to the contractor, including all
amounts due both on the original contract, and for extras re-
maining unpaid at the time Cameron filed answer in this cause
in December, was $5,210.62. The total demands of the appel-·
lants A. & S. Spengler amount only to $3,715.18. Hence, if the
Spenglers be paid in full, there remains a balance of $1,495.44,
which balance should be applied, in the order of priority of ap-
pellees' notices, to wit: $350.75 to Morrison Brothers and
$652.20 to Stiles-Tull Lumber Company; and balance to be
then applied to the claim of such of the other appellees as has
next priority of notice.

But passing further into the merits of the whole case, I con-
tend that, as the alleged assignment is signed only by one party
thereto, J. H. Jaffray Construction Company, and is therefore
unilateral, it is in no way binding upon the Spenglers. It is
not an absolute, unconditional assignment, since it recites that
it is "to secure said sum of $1,000, the amount of said material
and said cash advances," etc. The instrument was therefore
simply a mortgage, if any thing at all, and should have been
acknowledged and filed for record in order to give notice to fu-
ture creditors of the Jaffray Construction Company who might
figure on furnishing material to complete the building.

Although it is admitted that Cameron the owner had notice of
this so-called assignment by the contractor to the appellants, yet
it must be kept in mind that he never signed the assignment as
acquiescing therein, nor did he in writing bind himself to pay
over any money to the Spenglers. The record merely shows as
follows, "it is agreed that notice of the assignment by the Jaf-
fray Construction Company to A. & S. Spengler was served
upon A. P. Cameron on the day of its date." If such be con-
sidered a notice to Cameron within the requirements of Code

1906, § 3074, then it could simply bind money in his hands due to the Jaffray Construction Company to the extent of any then existing claim of A. & S. Spengler for material furnished and used in the erection of the building.

If a copy of the assignment had been read, or even given, to Cameron, which, however, does not appear to be the case, Cameron could only have considered that such amount as was comprehended under the term, "balance due as under said contract," was assigned. And if the contention of appellants,—that the assignment need not be recorded but that the appellees should have in any event gone to Cameron and made inquiry of him,— is correct, then necessarily the extent of information that Cameron could have given would be that the amount due to Jaffray Construction Company on December 13, 1906, had been assigned to the Spenglers, and no more; and since the evidence discloses that on such date little, if anything, was due, then the appellees naturally had the right to ignore the assignment as being of no actual value.

What does the assignment convey? The answer is shown in the words "the balance due us under said contract with said A. P. Cameron." At the time the assignment was executed, December 13, 1906, the foundation alone of Cameron's building had been laid. There is no suggestion in the record that at that time Jaffray for his company had ever collected anything from Cameron; and by the terms of the original contract between Cameron and Jaffray Construction Company only eighty per cent. of the estimated value of the work done was to be paid to the contractor as the work progressed, leaving twenty per cent. to be paid when work was completed and turned over. What would be a reasonable valuation for the cost of laying the foundations of a building the cost of which was to be $25,000 is a matter of conjecture, but $2,500 would, in this case, be a safe estimate. This would be ample security for the $1,000 then due and for advances of $1,500, taking into consideration that

out of the payments the Spenglers would stand on equal footing with other creditors.

The words, "that may be due us," used in the contract, refer solely to what may be due at the time they are written, and do not comprehend the future, if the intent were to comprehend future time, the additional words, "and to become due," would have been used. If it be supposed that Jaffrays, after having finished the foundation work, had discontinued his work and breached his contract with Cameron, what would the Spenglers' security or assignment have been worth? Surely not the balance of $23,000 named in the original contract as the price of erecting and completing the whole building. It must be held that the assignment, as written, as intended, under the circumstances, to refer only to such balance as was due by Cameron to Jaffrays on the date when it was executed.

But if it shall be held that the language of the assignment refers to funds to become due, as well as to funds already due at the date of the assignment, then appellees will still not be thereby unduly affected, because, as above set forth, the assignment is in effect only a mortgage and appellees were not bound thereby in absence of their knowledge of its existence. *Bunlyn v. Shippers Compress Company,* 63 Miss. 94; *Hutchinson v. Sims,* 57 Miss. 628; *Whitney v. Cook,* 53 Miss. 559; and see also 1 Jones on Mortgages (5th ed.), § 12.

An assignment by the vendee of a contract of purchase of land as security for a loan may be regarded as an equitable mortgage. Jones on Mortgages (5th ed.), 147. And see *Alexander v. Berry,* 54 Miss. 423.

Until Cameron accepted the assignment he was not bound to pay any money to the Spenglers. *Bush v. Foot,* 58 Miss. 5; *Savings Association v. Campbell,* 43 L. R. A. 627, 628.

But for the material and labor furnished by the appellees toward the building, the Jaffray Construction Company would never have been able to finish such work as they did, hence it would be highly inequitable for the Spenglers to be allowed to

profit by an assignment secretly taken covering all money due and all money to become due under the contract. *Farmers, etc., Co. v. Canada, etc., R. Co.,* 11 L. R. A. 704, 745; *Ottey v. Haviland,* 36 Miss. 19; *McAllister v. Clopton,* 57 Miss. 257; *Herron v. Warren,* 61 Miss. 514; *Bohn v. Kountz,* 12 L. R. A. 36; *Parkhurst v. Railroad Co.,* 81 Am. Dec. 648; *A. A. S., etc., Ass'n v. Campbell,* 43 L. R. A. 622, 627.

But for the case of *Peck-Hammond Company v. Williams,* 77 Miss. 824, 27 South. 995, I would feel not the slightest doubt about the position of appellees. And, in fact, if we analyze this case last cited it will turn out to be no authority against appellees. In the first place, the assignment there read, "all moneys due *and to become due* to him;" and, again, there was in that case an absolute assignment, without any reservation whatever, of benefits. Again, it appears that Wedgworth made two assignments, one considerably later than the other, in favor of Mrs. Williams, the appellee. With the decision in the case last cited staring me in the face, I am not in position to contend that "every assignment in good faith before notice of the lien is served," is not good. I concede the proposition to this extent, namely: if the building is erected and there are a large number of creditors whose claims are all unsecured, and no "stop" notices are served under Code 1906, § 3074, then a valid assignment of all the money then due to pay any one of the creditors would take precedence over the claim of any other creditor seeking to subject such balance, under Code 1906, § 3074. In such a case no one would have obtained an undue advantage, and it is evident that a debtor has a right to prefer any of his creditors.

I do, however, contend that, in this case, if the assignment be considered valid by this court so as to cover moneys to become due after the execution of the assignment, although the assignment on its face simply alleges that it conveys the "balance due," then the assignment must be construed merely as an instrument tending to give the assignee a security for a debt; and, since, this court held that a pre-existing mortgage should be

postponed and held subordinate to a subsequent mechanic's lien for buildings erected on the mortgaged property, then the assignment in this case must be held subordinate to the demands of appellees.

And I further contend that the action of the Spenglers, in addition to the wording of the assignment, shows conclusively that the Spenglers contemplated fully the very state of affairs which later came to pass, and that they had the same in mind when they accepted the assignment and made contracts with reference thereto; and they are now estopped to set up the assignment as against the demands of appellees.

And, in conclusion, I contend that the entire transaction has resulted in defrauding appellees of their legal rights, hence the judgment of the court below should be affirmed.

*W. H. Powell, Huber & Powell,* on the same side.

Cameron's building was constructed and completed after the execution of the assignment here in controversy; and, furthermore, almost wholly out of the material furnished and labor performed by the different creditors other than appellants. In short, Cameron's building has been erected with material and by labor of creditors other than A. & S. Spengler, and yet A. & S. Spengler alone receive the benefits.

The Spenglers cannot claim the fund under the assignment, as against appellees, because the assignment must be construed to be a mortgage, and it has never been acknowledged or recorded, and appellees had no notice of the assignment.

Material men are not subcontractors. 11 L. R. A. 743. The assignment to the Spenglers cannot by them be asserted against the material men. 11 L. R. A. 746.

Appellants are estopped from contesting the claims of appellees as appellants knew that material was being furnished to the Jaffray Construction Company by appellees; Jaffray having been authorized by the Spenglers to continue the construction of the building to its completion. 12 L. R. A. 35.

When creditors furnish material to complete a building they have a priority in claim upon the building for their unpaid demands, as against a claim evidenced by a prior recorded mortgage. 14 L. R. A. 308; 30 L. R. A. 775.

The mechanic's lien law is liberally construed in favor of a lien holder. 20 Am. & Eng. Ency. of Law (2d ed.), 277; *Weathersby v. Sinclair,* 43 Miiss. 189; *Columbus Insurance Co. v. Hirsh,* 61 Miss. 74.

The claims of material men and mechanics are favored by our law, and as to the building the mechanic or material man is entitled to a first lien. *Buchanan v. Smith,* 43 Miss. 101.

All of the appellees became creditors of the Jaffray Construction Company after the assignment in controversy had been made to the Spenglers, with the exception of the Stiles-Tull Lumber Company and Morrison Bros.

We contend, as above set forth, that material men are not subcontractors; and that the assignment to appellants cannot be ascertained by them against material men, such as appellees. Furthermore, if the Jaffray Construction Company, the contractor, could not defeat the claim of the material men, then the Spenglers, who as assignees stand in the shoes of the contractors, cannot. The Spenglers cannot be presumed to be *bona fide* creditors, because the assignment was made before the construction of the building and before any material was furnished by appellees. 115 N. Y. 407; 123 N. Y. 269; 107 Cal. 63; 11 L. R. A. 743.

The Spenglers are estopped from contesting the claim of appellees as material men since appellants knew that the Jaffray Construction Company was insolvent and was buying material on credit with which to construct the building, and that such material was making more valuable the security which they held under their secret unrecorded assignment or mortgage. *Kountze v. Berlin,* 12 L. R. A. 35.

Mechanic's lien laws are remedial in their nature and must be liberally construed in favor of material men and laborers.

20 Am. & Eng. Ency. of Law (2d ed.), 277; *Buchanan v. Smith*, 43 Miss. 90; *Weathersby v. Sinclair*, 43 Miss. 990.

From the moment when notices were served by appellees upon Cameron, all that Cameron then owned, and all that he might thereafter owe under the contract, became bound in his hands in favor of those serving notice. *Columbus Insurance Co. v. Hirsh*, 61 Miss. 74.

The contract between the Jaffray Construction Company and Cameron provided for the construction of the building. The assignment by the Jaffray Construction Company to the Spenglers provided for the completion of the building by the Jaffray Construction Company. In such case, the laborers and the material men who became such after the assignment, should have priority over Spengler in their claims upon the building. 20 Am. & Eng. Ency. of Law (2d ed.), 322.

As between the assignee, for a valuable consideration of a contractor, and the material men who furnish material to the contractor, those material men who furnish material after the assignment are entitled to priority.

Whitfield, C. J., delivered the opinion of the court.

The case of *Peck-Hammond Company v. Williams*, 77 Miss. 824, 27 South. 995, controls this case perfectly. The court erred, therefore, in holding the contrary view. The judgment should have awarded the appellants the whole of the value of the amount furnished by them; and the other parties, as correctly held by the court, so far as priority is concerned, would be entitled to the balance in the order in which they served notice upon the owner, as shown by the pleadings and the agreed statement of facts.

*Reversed and remanded.*

Mayes, J., dissented.

The counsel for appellees filed a suggestion of error, to which the court responded as follows:

WHITFIELD, C. J., delivered the opinion of the court in response to the suggestion of error.

The case made by the record is briefly this: A. P. Cameron contracted with J. H. Jaffray, who was doing business under the firm name of J. H. Jaffray Construction Company, to build him a residence in the city of Canton, Miss. Jaffray proceeded to carry out his contract. When he completed the foundations, he executed the following assignment to appellants, A. & S. Spengler, of Vicksburg, Miss.: "In consideration of the sum of $1,000 heretofore advanced us by A. & S. Spengler, of Vicksburg, Miss., and further consideration that the said A. & S. Spengler have agreed to advance us certain materials in their line for the construction of the house, or residence, we are building for A. P. Cameron, at Canton, Miss., and the further consideration that they have agreed to extend us a cash credit, not exceeding at any one time, of fifteen hundred dollars, for labor, we, the undersigned, J. H. Jaffray, composing the firm of J. H. Jaffray Construction Company, do hereby transfer and assign, to secure said sum of $1,000, the amount of said material, and said cash advances, unto the said A. & S. Spengler the balance due us under said contract with the said A. P. Cameron for the construction of said building as aforesaid, and direct the said Cameron to pay over the said balance to the said A. & S. Spengler as the payments become due; the duplicate of said contract being herewith attached. Any balance, after paying what may be due the said A. & S. Spengler, shall be paid over to us. Witness our signature on this the 13th day of December, 1906. [Signed] J. H. Jaffray Construction Company." Notice of the assignment was given by appellants to Cameron, the owner, on the day of the assignment. Appellants continued to advance Jaffray material and cash money under said assignment for use in the construction of said building, and Cameron made payments under his contract from time to time to appellants. When the residence was completed, appellants

claimed there was due them $3,600 or $3,700, as shown by the pleadings and exhibits.

Appellees, who are various subcontractors or material men, not knowing of the assignment to appellants by Jaffray, furnished material and labor to Jaffray in the construction of said buildings, and, not receiving payment therefor, served "stop" notices on Cameron under Code 1906, § 3074, but long after the assignment. It is agreed, for the purpose of this appeal, that the notices are all in proper form, and served in conformity with the provisions of said section. It is also agreed that Jaffray remained throughout in the possession of the work as contractor, and that all the "stop" notices were served upon Cameron, the owner, by appellees subsequently to the execution of said assignment by Jaffray to appellants, and subsequently to the service upon Cameron by appellants of notice of said assignment. When said building was completed, Cameron owed a balance of $5,210.62 under his said contract with Jaffray. Appellants claimed $3,600 or $3,700 of this amount under their assignment, and appellees' claims on said fund aggregate $3,600, so that Jaffray's total indebtedness to appellants and appellees reached a sum total of about $7,200 or $7,300, not enough to pay all in full. Hence this lawsuit, in which appellants contend that they should first be paid in full.

The Stiles-Tull Lumber Company and others filed their suits in the circuit court of Madison county for the purpose of enforcing their rights under Code 1906, § 3074. A. P. Cameron answered, and paid over into court what he claimed to be due under his contract, $5,210.62, and asked that all parties in interest be brought in as parties to the said proceedings. The cases were thereupon all consolidated, and an issue made up between appellants and appellees. A jury was waived, and the case heard by the court. It was further agreed that there was more due appellants by Jaffray under said assignment than the difference of what was due the other appellees and the amount

paid by Cameron into the court. This admission had the effect of removing all question that had theretofore been raised as to the correct amount due appellants under the assignment.

When the appellants sought to introduce said assignment in evidence, appellees objected to its introduction on the following grounds: (a) Because "said assignment is no more nor less than a mortgage, which has never been acknowledged or filed for record in Madison county, or anywhere else, as required by law." (b) Because "no notice was given to the other parties (appellees) of appellants' assignment." (c) Because "it is irrelevant incompetent, and immaterial, so far as it may affect any rights or interests of appellees to the funds in controversy." (d) Because "no claim can be made thereunder, by virtue of the lien they claim, under the mechanic's lien law of the state." (e) Because "it is not signed and acknowledged, and has not been filed for record." (f) Because "none of the appellees had any knowledge of it." (g) Because "it is purely and simply a mortgage, and, in order to have been valid should have been recorded, or other actual notice given the other creditors." (h) Because "the action of appellants in allowing Jaffray to stay in possession of the job and contract bills, after all improvements were made, prevents them from contesting the claims of appellees."

Upon the foregoing exceptions the court made the following ruling: "The court holds, on the motion to exclude the assignment, that the assignee is entitled to whatever was due on the building to the builder at the time the assignment was made; that after that time the assignee stood in the shoes of the builder, and was only entitled under the assignment to such additional amount as might have been earned by the builder under his contract. The court, however, is of the opinion, further, that the assignment shown to have been served on the owner was sufficient notice of an indebtedness of $1,000, and as to whatever sum the evidence may show was earned by the builder at the time of the execution of the assignment Spengler would be en-

titled to the amount of the said contractor's labors or material,. and as to the other money in court it should be paid to the other· parties in the order in which they served notice upon the owner,. as shown by the pleadings and by the agreed statement of facts, and that any balance in the court should be paid to Spengler· under his assignment. For these reasons, the court overrules the motion to exclude the assignment, and allows it to remain in evidence for the purpose above stated."

Appellants then and there excepted to the ruling of the'court.. Appellants next admitted that there were no profits in said con-tract at the time of said assignment, or at the completion of the job. Appellees thereupon moved the court for a judgment for·· the amount of their claims, to be paid in their priority, with six per cent. interest, to the exclusion of the claim of appellants, and admitted, for the purpose of the motion, that the balance· was not sufficient to pay appellants' claim under said assign-ment in full. The court. sustained the motion and gave judg-ment accordingly.

The purpose of both parties in making the agreed statement of facts, which was made in an irregular sort of way, from time to time, in the course of the trial below, was manifestly that, after such agreed statement of facts had been made further tes-timony would be adduced by appellants and appellees. But the court's ruling on the effect of the assignment to the appellants had the practical effect of destroying entirely the contention of· appellants as to their prior right to the funds in court, and made, of course, the introduction of further testimony unneces-sary, especially, when it was admitted that there was more due appellants by Jaffray under said assignment than the difference between what was due the other appellees and the amount paid by Cameron into court. Really the ruling of the court left noth-ing to be determined in the case except to settle the correctness of the ruling in construction of the assignment, and accordingly the appellant's appeal to this court was taken, the object of the appeal being plainly to have this assignment construed, since,.

as must be obvious, the true construction of this assignment is the pivotal point in the case.

It will be noticed, from the objections made by appellants to the introduction of said assignment, that almost their sole ground of objection was that this instrument was not an assignment, but a mortgage; and, indeed, the chief contention made by learned counsel for appellees in this court, in the oral argument and in their briefs, is that the instrument must be held to be a mortgage, and that consequently, since it was not recorded as mortgages must be to affect the rights of third parties, the appellees here must prevail over this so-called unrecorded mortgage, of which the appellees never had any actual or any constructive notice. This is a totally erroneous view of this instrument. It is plainly nothing else than an ordinary simple assignment. Learned counsel for appellees segregate from the assignment one particular clause in it, to wit, "The balance due us under said contract with the said A. P. Cameron for the construction of said building as aforsaid," without looking to the other provisions of the assignment. Of course, this is not the proper way in which to construe the assignment. All its provisions must be taken in one view, and the purpose of the assignment worked out from the whole instrument, and not a part of it. Counsel for the appellants well say: "The fact that appellants were to continue furnishing material and money for labor; the fact that Mr. Cameron was directed to pay over to appellants the balance 'as the payments became due;' the fact that the balance, after paying what might be due appellants, should be paid over to Mr. Jaffray; the fact that no particular payments were assigned, and others reserved, and many other features about the assignment might be cited to show that the intention of the parties was not to transfer only what was then due, but what was to become due."

Again, it is a well-settled canon of construction that the contemporaneous construction placed upon an instrument by the parties thereto is entitled to very great weight in reaching the

intent and purpose of the instrument. In the record we find this, an agreed statement of facts: "It is agreed that since the assignment A. & S. Spengler went on furnishing material to the Jaffray Construction Company under said assignment as shown by the record, and that A. P. Cameron, from time to time after the date of said assignment, paid to A. & S. Spengler the aggregate sum of $14,000." This demonstrates that Cameron authorized and acted under this construction of the assignment by paying from time to time to appellants said aggregate sum of $14,000, that Mr. Jaffray acquiesced in said payments made to appellants by Cameron, and that consequently all parties to the instrument put one and the same construction upon the assignment, to wit, that it transferred to the assignees the funds due and to become due. The contention that this instrument, either by its terms alone, or in connection with the contemporaneous construction thus put upon it by all parties to the instrument, constituted a mortgage, is not worthy of serious consideration. It will be further noted that the court below held this instrument to be an assignment, since it overruled all the objections made to its admission on the ground that it was a mortgage, and allowed the assignment to go in evidence. The court below expressly calls it, in its ruling, "an assignment," and refers to the appellants as the "assignees." The error of the court below consisted in holding that the assignees were only entitled to the sum due on the building at the time the assignment was made, to wit, as alleged, $1,000, and that the assignment was invalid to transfer to the appellees any sum thereafter to become due after such assignment. The fact is that the appellants, the assignees, went on furnishing material and money for labor to the extent of $14,000. When the contest arose, the appellants had a just claim for some $3,700, and the appellees had a just claim for some $3,600.

So far as any equities are concerned as to the real merit of these claims, one is just as meritorious, in all respects, as the other, and all that is so earnestly insisted on by the learned

counsel for appellees, to the effect that the appellants, the assignees, ought not to be allowed to prevail here under their assignment, because of some supposed higher right, moral or equitable, on the part of appellees to said fund, is entirely without foundation. Let it be specially noted that the appellants were not the assignees of the contract as held by the learned judge below. This assignment was not an assignment of the contract of Jaffray, but an assignment of the funds due and to become due under that contract. The language of the instrument places this beyond controversy. It says that in consideration of $1,000 heretofore advanced, etc., and the further consideration that appellants have agreed to advance certain materials, etc., and the further consideration that appellants have agreed to extend a cash credit, not exceeding at any one time $1,500, for labor, therefore Jaffray transferred and assigned, to secure all these things what? His obligation as contractor, with its rights and liabilities? Not at all; but "the balance due us under said contract with the said Cameron, as the payments become due," etc. A plain, manifest transfer of the funds due under the assignment, but no assignment of the contract in any legal sense. All therefore, that is said in the brief of counsel for appellees about the Spenglers not having any higher right than Jaffray, on the notion that the appellants stood in the same relation to the subcontractors and material men, and the appellees, that Jaffray stood in to them, is obviously beside the mark. The assignees had nothing on earth to do with Jaffray's contract to build the house, nor his duties and obligations arising out of that contract; and hence they occupied no relation towards these appellees such as Jaffray the contractor did. They assert a claim under this assignment to the funds due and to become due, and that is the whole extent of this assignment. What, then, is our mechanic's lien law, and what are the respective rights of the appellees and this assignee under that law, and our decisions interpreting that law?

First of all, let it be noted that, in determining any question

as to the rights growing out of the mechanic's lien, the court is to be critically careful to notice the various statutes of the different states, and the wide differences between them; indeed, the wide differences, at different times, existing between the statutes of the same state on this subject. It is said in 27 Cyc. pp. 89, 90, on this subject: "The protection of the subcontractor and material man, with a just regard to the rights of the owner of the property, has been the subject of much solicitude with most of the legislatures. Two systems seem principally to have been adopted—one known as the 'New York system,' the other as the 'Pennsylvania system.' The one in Pennsylvania, which was the first, where the mechanic who did the work and the material man who supplied the articles used were deemed entitled to protection, rather than a mere builder or undertaker of contracts, made provision that the subcontractor and material man should have a lien for whatever sum might be due to him directly on the building and land upon which it stood, and subordinated the lien of the contractor thereto. The other was the plan adopted in New York, which did not secure to any one, except the original contractor, an absolute lien on the property for the whole sum due, but by a species of equitable subrogation allowed the subcontractor and material man to give written notice to the owner of his unpaid claim, requiring the owner thereupon to retain such funds as were in his hands, belonging to the contractor, to answer the suit of the subcontractor, and securing the same either by lien upon the interest of the owner in the property or a right of action against him; the payment of this sum to operate as a valid set-off against any demand of the contractor. The prominent distinction between the two systems is this: Under the New York system the subcontractor cannot recover more than is due from the owner to the contractor; while under the other system the original contract, or payment to the original contractor, is no defense to a claim of a subcontractor. A clear conception of the distinction between these two systems is necessary to an understanding of the cases, for not only have different

systems prevailed in different states, but in some instances the legislative history of a single state shows that each of the two systems mentioned has prevailed therein at some period; and many propositions of law laid down with reference to one system are totally inapplicable (or would even be incorrect) where the other system prevails. It seems, however, that the plan of conferring on subcontractors and material men a right of lien for all sums which may be due them, irrespective of payments already made by the owner to the contractor, is passing out of favor, and the tendency in later legislation is to confine their right to what may be owing by the owner to the contractor at the time of notice to him of their claims."

There then follows in this text a very careful consideration of the laws of the different states and the changes made, it being pointed out that in California the Pennsylvania system was first adopted in 1858, but that in 1862 that system was repealed and the New York system adopted, and that this New York system was in turn repealed in 1868, and the Pennsylvania system restored, and that finally the present California statute (Code Civ. Proc. § 1183 et seq.) restored again the salient features of the New York system. It will thus be seen that this court must determine this case, not by the statutes of other states, but by the statutes of its own state. Now, what is that statute? It is contained in Code 1906, § 3074, so far as this case is concerned, which is as follows: "When any contractor or master workman shall not pay any person who may have furnished materials used in the erection, construction, alteration, or repairing of any house, building, structure, fixture, boat, watercraft, railroad, railroad embankment, or the amount due by him to any subcontractor therein, or the wages of any journeyman or laborer employed by him therein, such person, subcontractor, journeyman or laborer may give notice, in writing, to the owner thereof of the amount due; and thereupon the amount that may be due by such owner to the contractor or master workman shall be bound and liable in the hands of such owner for the payment of

the sum so claimed; and if, after notice, the contractor or master workman shall bring suit against the owner, the latter may pay into court the amount due on the contract; and the person giving notice shall be summoned to contest the demand of such contractor or master workman; and the court may cause an issue to be made up and tried, and direct payment of the amount claimed by the person giving notice out of the money so paid into court; or, in case the person giving the notice shall sue the contractor or master workman he shall make the owner a party to the suit, and thereupon the owner may pay into court the amount due on the contract, or sufficient to pay the sum claimed, and costs, and the court shall award the same to the person who may be entitled thereto; and in neither case shall the owner be liable to pay costs; but if the owner, when sued with the contractor or master workman, shall deny any indebtedness sufficient to satisfy the sum claimed, and all costs, the court, at the instance of the plaintiff, may cause an issue to be made up to ascertain the true amount of such indebtedness, and shall give judgment and award costs according to the justice of the case. In case judgment shall be given in favor of the person giving the notice, as hereinbefore provided for, against the owner, such judgment shall be a lien from the date of such notice, on the building, house, structure, fixture, boat, watercraft, railroad or railroad embankment in or upon which the material or labor mentioned, in such notice was used or done and may be enforced as in case of liens in other cases provided for in this chapter."

The mere reading of this statute shows that the New York system, and not the Pennsylvania system, is the one which this state has adopted, and which is now in force in this state. See 27 Cyc. p. 101, upon the New York system. The courts of New York have made their system perfectly clear. Under that system it is only the original contractor who has any absolute lien. The subcontractor and the material men have no lien, except from the date on which they give written notices of their claims to the owner, from which date the owner is required to retain

such funds as were in his hands belonging to the contractor at that time. Under the Pennsylvania system, subcontractors and material men were entitled to a direct lien in all respects equal to the lien of the contractor. The difference between the two systems, is as wide as the distance between the poles, on this vital point. In New York, in *Stevens v. Ogden et al.,* 130 N. Y. 182, 29 N. E. 229, that court said on this subject: "The order drawn by the contractor on the owner in favor of E. H. Ogden & Co. for $909.94, being by its terms payable out of a particular fund specified in the order, operated as an assignment, *pro tanto,* of that fund. *Brill v. Tuttle,* 81 N. Y. 454, 37 Am. Rep. 515; *Conselyea v. Blanchard,* 103 N. Y. 222, 8 N. E. 490; *Lauer v. Dunn,* 115 N. Y. 405, 22 N. E. 270. In *McCorkle v. Herrman,* 52 Hun, 610, 5 N. Y. Supp. 881, reversed 117 N. Y. 297, 22 N. E. 948, several persons had performed labor and furnished materials for a building erected by a contractor for the owner. After the work had been done and the material supplied, but before any lien was filed, a judgment creditor of the contractor began supplementary proceedings to collect his judgment, which did not arise out of, and had no connection with, the building contract, and procured the appointment of a receiver. Subsequently the laborers and material men duly filed their liens, and the question arose whether they or the receiver had the prior right to the sum due from the owner to the contractor. It was held at the general term that the lienors had the prior right. In discussing this question the court said: 'The statute gives a creditor a lien against a particular fund upon his doing certain things, and that lien is superior to the claim of any other creditor who has not taken the steps designated by the statutes to secure a lien. The plaintiff, by his appointment as receiver, undoubtedly became vested with all the right, title, and interest of his judgment debtor in and to this fund as of the time when the preliminary order was served. But he gets no greater right than he would have had if his judgment debtor had assigned the same to him on that day,

and he cannot enforce any other or greater rights than his judgment debtor could enforce. His creditors, by the permission of the statute have been enabled to assert a claim upon his debt due to the judgment debtor, and by reason of the statute, having taken those steps, they have a superior claim upon this debt due to him; and by the transfer of this debt to another person, whether by operation of law, or by a voluntary assignment, the plaintiff's debtor could not deprive the creditors of the right which the law conferred upon them.' The court of appeals reversed the judgment, and in discussing 'the question, said: 'The real question presented by the demurrer relates to the priority of lien between a judgment creditor of a contractor, who has duly commenced supplementary proceedings on his judgment, terminating in the appointment of a receiver, and laborers and materialmen, who, subsequent to the commencement of the supplementary proceedings and within the time allowed by the law, filed notices of lien to reach the debt owing to the contractor under a contract with the owner of a building for its construction. The section of the lien law (ch. 342, p. 585, Laws 1885) which govern the rights of the lienors in this case prescribed that upon "filing the notice of lien" a lien shall be acquired, etc. The filing of the notice orginates the lien. Anterior to this act the laborer or materialman has no preferential right to be paid for his labor or material out of the sum which is due from the owner of the building to the contractor, but stands in the same position as other creditors. He may subject the debt to a lien in his favor on filing the notice and taking the proceeding prescribed by the act. But if, before this has been done, other creditors, pursuing the usual remedies for the collection of debts, have acquired a legal or equitable right to have the debt applied in satisfaction of their claims the rights is not overreached by liens subsequently filed under the act, unless priority is given by the provisions of the act itself. . . . Which of the claimants have the prior right? We think the plaintiff, as receiver, has

the superior claim.  He stands as the assignee of the claim of the contractor against the defendant, by a title which antedates the filing of the notices of lien.  When the liens were filed there was a debt owing by the defendant.  If the proceeding instituted by the creditor, whom the plaintiff represents, has been abandoned, the lien would have had priority.  But not having been abandoned, and the equitable lien existing when the liens were filed having been converted into a legal title as of a time anterior to the filing of the liens, the right to the debt, as between the plaintiff and the lienors, vested in the former.  The plaintiff, we think, stands in as good a position, at least, as if, prior to the filing of the liens, the contractor had in good faith assigned his claim against the defendant to the creditor in the supplementary proceedings as security for his debt.  The assignee under such an assignment, according to the general current of authorities, would take precedence over lienors under liens subsequently filed.'  The case cited, like the one at bar, arose under chapter 342, page 585, Laws 1885, and is decisive of the question persented.  There is no provision in the statute forbidding a contractor to pay his creditors out of the money due or to become due him from the owner, to the exclusion of laborers and materialmen who have not filed liens.  This may be an omission; but, if so, it can only be supplied by the legislature, for the courts cannot extend these purely statutory rights beyond the terms of the statute by which they are created.  The judgment of the general term should be reversed, and the judgment entered on the decision of the special term, with costs."

The same doctrine precisely is laid down in the case of *Bates v. Salt Springs National Bank of Syracuse,* 157 N. Y. 322, 51 N. E. 1033, in which case the facts are in all respects practically the same as in this case, with the additional fact that there was a clause in the contract by which the contractor was required to obtain a certificate from the county clerk that no liens were unsatisfied of record, etc.  The supreme court held that this clause was a protection to the subcontractors, and

defeated the assignment. The appellate court reversed this finding of the supreme court, and held as follows: "The opinion held that under the mechanic's lien law (Laws 1885, p. 585, c. 342) the laborer or materialman has no preferential right to be paid out of the sum due the contractor until he files notice of lien. In the absence of anything to the contrary in the contract, and before any notice is filed, the contractor may assign to his creditor, in payment of his debt, the whole or any portion of the moneys due or to become due under the contract, and the assignee acquires a preference over a subsequent lienor. This view was based on abundant authority, and is indisputable. *Brill v. Tuttle,* 81 N. Y. 454, 37 Am. Rep. 515; *Lauer v. Dunn,* 115 N. Y. 405, 22 N. E. 270; *McCorkle v. Herrman,* 117 N. Y. 297, 22 N. E. 948; *Stevens v. Ogden,* 130 N. Y. 182, 29 N. E. 229; *Beardsley v. Cook,* 143 N. Y. 143, 38 N. E. 109. The principle to be extracted from the cases is that a lienor obtains no greater right to the moneys payable by the owner than the contractor has, and if the latter has assigned to a creditor *pro tanto* the assignee gains a preference over subsequent liens. . . . Under the doctrine of equitable assignments, it is of no consequence to the relative rights of assignees and lienors that the money may not be immediately payable. Concluding, therefore, as I think we are bound to do under the authority of *Lauer v. Dunn,* that this clause in the contract was for the benefit of the trustees only, it follows that the assignment by the contractor to the Salt Springs Bank of the last payment upon the contract, executed upon the making of the contract, operated as an equitable assignment of the moneys remaining unpaid upon the contract when notice of it was given to the trustees, and gave to the assignee a preference over liens subsequently filed. There is no question as to there being an indebtedness from the contractors to the bank, and, upon notice of the assignment to the trustees, the effect was to bind the moneys remaining unpaid upon the last installment in favor of the bank's claim. There had been an equitable assignment of

the moneys, which only required for its enforcement a fund to fasten upon and a notice to the holder of the fund. The bank acquired the right of the contractors, who lost their interest in and dominion over the fund, and its assignment was subject to no other equities than such as the trustees may have had against the contractors at the time they had notice of the assignment. It follows, from the view expressed, that the judgment appealed from should be reversed, and a new trial ordered, with costs to abide the event."

Identically the same doctrine is announced with great clearness in the case of *Binns v. Slingerland*, 55 N. J. Eq. 55, 36 Atl. 277. In that case the contractor gave orders or assignments to the various creditors, and the owner did not accept them. Slingerland, a subcontractor, afterwards served "stop" notices upon the owners, and the court said. "It was not seriously contended but that the drawing of the orders worked an equitable assignment of so much of the last payment as they covered, and that they thereby gained, in equity, a priority over the notice served by the defendant herein. *Superintendent, etc., v. Heath*, 15 N. J. Eq. 22; *Lanigan's Adm'r v. Bradley*, 50 N. J. Eq. 201, 24 Atl. 505. And it is equally clear that the rights of such equitable assignees could have been enforced in this court. And if the complainants herein had, as soon as the building was completed and the payment of $1,400 became due from them, deposited the same in this court, and filed a bill of interpleader against the several parties, the holders of those orders would have prevailed over the defendant, Slingerland, claiming under his stop notice of September 12th. They were first in time, and therefore prior in right. . . . The practice of contractors making such preferences by giving orders to materialmen has become so thoroughly familiar to everybody, and has been so frequently before the courts, and their right so to do so thoroughly established, that I must conclude that if the legislature had intended to restrict this right on the part of contractors, they would have done so by express language." So in

*Tollheis v. James,* Wkly. Law Bul. (Ohio) 277; *Hall v. Banks,*
79 Wis. 299, 48 N. W. 385; *Copeland v. Manton,* 22 Ohio, St.
398; *Board of Education v. Duparquet,* 50 N. J. Eq. 234, 24
Atl. 922.

Indeed, this view is announced by 27 Cyc. p. 231, as the gen-
erally accepted doctrine. At page 231 of 27 Cyc. it is said:
"It has been held that if, before the notice or claim of lien is
served on the owner or filed, the contractor assigns his claim
against the owner, the assignee has the prior right to the fund,
and an order given by the contractor on the owner, payable out
of what is due or to become due under the contract, operates as
an assignment *pro tanto* of the fund, even without any accept-
ance of the order by the owner." Authorities are cited in sup-
port of this view from California, Iowa, New Jersey, New
York, Ohio, and Wisconsin, an overwhelming array of author-
ities. We will not burden this opinion by citing them in de-
tail, as they are set out in 27 Cyc. p. 231, note 98. We have
verified these citations, and they fully support the text. On
page 232, at the end of this citation of authorities, the editors
of Cyc. cite as *contra, Carter v. Brady,* 51 ''la. 404, 41 South.
539; *Beardsley v. Brown,* 71 Ill. App. 199; *Simpson v. New
Orleans,* 109 La. 897, 33 South. 912, and *Bourget v. Donald-
son,* 83 Mich. 478, 47 N. W. 326; and we remark, in passing,
that these authorities cited as *contra* on this page 232 of Cyc.
are the very cases cited by learned counsel for appellees, and on
which they rely chiefly for support of their view.

Let us look carefully at these authorities a moment. In the
case in 83 Mich. 478, 47 N. W. 326, it very clearly appears that
the materialmen under that law had a lien equal to the contract-
or's lien, and it is expressly set out on page 482, 83 Mich., and
page 328, 47 N. W., that the statute provided that the material-
man or subcontractor had to file his written lien for record in
the office of the register of deeds. That case of course, has no
application here, where the materialman has no lien, and where
the claim for the lien is not required to be recorded. In the

case in 71 Ill. App., at page 201, it is expressly stated that sec-
24 of the lien law provided that any materialman should have
the lien, and on page 202 the court says: "The section pro-
vides:· (1) That any person furnishing material or labor to the
contractor shall have a lien upon the money, bonds, or warrants
due or to become due the contractor for the improvement, pro-
vided the proper notice is given. (2) There shall be no priority
between persons serving such notices. Comparison of this sec-
tion with others of the act will show a clear purpose to give the
subcontractor a lien equal to that of the contractor in all re-
spects." This last sentence disposes entirely of this last case as
having no sort of application in this state. In the case of
*Simpson v. City of New Orleans,* 109 La. 897, 33 South. 912,
it also clearly appears that the materialman was given a lien
under the statute, and that Kent, who furnished the materials
and had this lien, recorded his claim under the statute. This
case, also, has no application to our statute. In the case of
*Carter v. Brady,* 51 Fla. 404, 41 South. 540, it appears that
Brady, the owner of the land, accepted an order in favor of one
W. C. Spencer, on account of the contract of building the house
for Brady, on condition, however, that Spencer should complete
the building; Brady agreeing, on this condition alone, that he
would then pay to Spencer the balance then unpaid on the con-
tract. ` By section 5 of lien law of the state of Florida (Laws
1903, p. 78, c. 5143), set out plainly in the opinion, it is ex-
pressly provided that liens should exist in favor of "any person
who shall furnish any building material used in construction,"
etc. The court said, toward the close of the opinion: "Our
statute cannot be subject to the construction that the contractor
can at any time during the progress of the building under his
contract assign the balance due for such building to a third
party and upon the acceptance of such assignment by the owner,
a materialman, to whom a lien is given under the statute, will
be deprived of all the benefits which the statute has intended
to confer upon him." It is too obvious for discussion that, the

Florida statute giving the materialman the direct lien, the decision of the Florida court was eminently correct on its statute, but is wholly inapplicable to our statute, which gives no such lien.

Surely it ought to be accepted after this citation of authorities, and this analysis of those cited as holding *contra,* which do not hold *contra,* but only hold that, where a lien is given the materialman by the statute, such materialman would prevail over an assignee, that under our statute, which does not give any such lien, the assignee must of necessity prevail over the materialman, who has acquired no lien until after the assignment has been executed and delivered.  Out of great deference to the very learned counsel for appellees, and their extreme earnestness in urging their view, an examination will be made now, wholly unnecessary, however, of other authorities cited by them.  One of these cases is *Newport Wharf & Lumber Co. v. Drew,* 125 Cal. 585, 58 Pac. 187.  What was held there?  Just this: "If the contractor is still entitled to demand payment of installments already matured at the time of the notice (that is, notice by the materialman), payment to him is intercepted by the notice; but, if he has already assigned them to a third party, the notice will be inoperative to prevent their payment to such party." - This is a direct authority for the appellants. Another case cited by appellees is *Board of Education v. Duparquet,* 50 N. J. Eq. 234, 24 Atl. 922.  What does that case hold?  "An assignment, in language operating in *præsenti,* of money due and to grow due from a third person, effects an immediate and present transfer to the assignee of a right to demand and receive the money assigned without notice to the debtor; and after such assignment the debtor no longer owes the assignor, but does owe and will owe to the assignee what he would otherwise owe to the assignor."  Another direct authority for appellants, and, let it be noted, holding that these appellees were not entitled to any notice of this assignment, a thoroughly well settled proposition.  Learned counsel for appellees say that in

this case, and in several other cases, the building was completed before the assignment was made. But what earthly effect that fact could have upon the validity of this plain common-law assignment, we are unable to see; nor in this case is that fact counted on in the least.

In several cases cited by learned counsel for appellees, to wit, to group them and dismiss them, *Wimberly v. Mayberry,* 94 Ala. 240, 10 South. 157, 14 L. R. A. 305; *Glass v. Freeborg,* 50 Minn. 386, 52 N. W. 900, 16 L. R. A. 335, and *Farmers' Loan & Trust Company v. Canada R. R. Co.,* 127 Ind. 250, 26 N. E. 784, 11 L. R. A. (O. S.) 740, the common principle is announced—all these cases being mortgage cases, and not cases of an assignment at all—that where no railroad is in existence, or where no house is in existence, and a mortgage is given on the railroad or on the land, and the labor, materials, and money of the materialmen and subcontractors gave all there was of value to the property claimed under the mortgage, the mortgagee ought to show a clear and strong superior right in order to defeat the claims of those who in reality brought the claims into existence; the principle being that the mortgage on the railroad in one case, and the mortgage on the land in the other, could not prevail over mechanics and materialmen whose money created in one case the railroad, and in the other the house on the land. In the case of *Bohn Mfg. Co. v. Kountze,* 12 L. R. A. 33 (30 Neb. 719, 46 N. W. 1123), the holding was, as set out at page 36, bottom of second column: "Where a vendee, owing the equitable title, contracts for the erection of a building, upon the express authority of the owner of the legal title, it is but just that the lien of the mechanic should attach to the interest of both vendor and vendee in the premises and be paramount to the lien of the vendor." That is obviously correct, because of the agreement of the owner of the legal title, the vendor. But, besides, the case is from the state of Nebraska, in which as shown in this very opinion, section 1 of the mechanic's lien law pro-

vides that the materialman should have a lien—another case,. therefore, wholly inapplicable under our statute.

Apply to the situation our Code 1906, § 3074, and the general principle of law as to the right to make a common-law assignment, and what do we have? Why, manifestly the assignees here, and appellees, were, prior to the assignment, mere creditors at large, without any lien under this statute given to either.. That being the situation, and our statute giving the materialman a lien only from the service of the stop notices, as expressly held in *Herrin v. Warren & Mobley,* 61 Miss. 509, what was there in the law to prevent the contractor from assigning the balance due and to become due to him to the appellants? Why, most manifestly, he had the common-law right to make the assignment, and, if that assignment was duly executed and delivered to the appellants prior to the time when these appellees secured any lien by the service of the stop notices, it is too clear for argument that the assignees must prevail over these appellees, because of the universal equitable doctrine that he who is first in time is first in right. That is this whole case, stripped of all the confusion which has been thrown around it, growing out of the misconception that in some way, or somehow, or somehow else, these materialmen should be preferred to these assignees— exactly why, no one can tell. They had no lien until they served the stop notices. Long prior to that the appellants had the assignment. Both were general creditors, and he who, in the race of diligence to secure himself, first got a claim by their assignment, being first in. time, is first in right. That absolutely is this whole case, stripped of all the clouds and darkness which have been thrown about it.

We will, however, because we desire as far as possible to satisfy the learned counsel for appellees of their erroneous view, notice a few other of their contentions. It is complained that the assignees gave these appellees no notice of their assignment. None was necessary. The doctrine is stated thus in *Hall v.*

*Banks,* 79 Wis. 229, 48 N. W. 385: "The lien of a subcontractor is defeated by an assignment of the claim due from the owner of a building erected under contract to the original contractor, made in good faith before the notice of the lien is served, although the owner knew when he paid the assignee that the subcontractor held unpaid claims." So in *Copeland v. Manton,* 22 Ohio St. 398, and in *Board of Education v. Duparquet,* 50 N. J. Eq. 234, 24 Atl. 922. The truth is, the case of *Herrin v. Warren,* 61 Miss. 509, is absolutely decisive of this case in favor of appellants under our statutes. If, as said by the New York court of appeals, the legislature intended to forbid assignments in cases of this sort, or to prohibit their obtaining priority as in this case, nothing was easier than for the legislature to put in the mechanic's lien law that sort of prohibitive provision. There is nothing like that in our section 3074, and until the legislature does put it there the contractor has the common-law right to make the assignment, such as was made in this case, and it will be enforced by this court according to the principles governing same.

There are a great many inaccuracies, inadvertent, of course, in the statement of facts by learned counsel for appellees. For example, to run hastily over them, the amount for extras was not $2,300, but $1,463.85; the $9,000 paid by Cameron before any notices were served was paid directly to the Spenglers, not by Jaffray, and by him to the Spenglers. Cameron was notified of this assignment the very day it was made. There is no clear evidence in this record that appellees furnished material with the knowledge and consent of appellants. This is sought to be worked at in a very vague way, from certain checks; but, if it had been clearly proven, it would make no sort of difference as to the rights of appellants. It was the business of the appellees to give notice themselves to Cameron, and not negligently and supinely furnish these materials without the exercise of any sort of diligence on their part. They have only themselves to blame for what they may lose. There is nothing

that we can find in the record to show that $2,020 were paid to the assignees on an old account. We do not know how this is worked out. It seems pretty clear to us, from the record, that about $55 was the only amount paid on such old account, and that the balance was for material furnished for this very building. What is shown in the record seems to make this pretty clear; but what difference could it make if it were true? Learned counsel for appellees seem to be of the opinion that an assignment would not have been good as against appellees for a debt due the assignee by the assignor, if that debt did not grow out of the construction of this building. This is a wholly erroneous view; and there are other minor inaccuracies which we will not protract this opinion by setting out.

Another proposition of learned counsel for appellees is that Cameron did not assent to this assignment. We think the fact is shown otherwise by the record; it is agreed that Cameron had paid appellants, since the assignment and under the assignment, $14,000. This $14,000 was for money and materials; but what if Cameron had not assented to the assignment by Jaffray to the appellants? Such assent of the debtor, Cameron, was not necessary to give effect to the assignment executed and delivered by Jaffray to the appellants. *Knapp v. Eldridge,* 33 Kan. 106, 5 Pac. 372; *Newbry v. Hill,* 59 Ky. 530; *Roger Williams Ins. Co. v. Carrington,* 43 Mich. 525, 5 N. W. 303; *Garland v. Harrington,* 51 N. H. 409; *Mourton v. Robertson,* 3 La. 439.

We have thus most patiently, carefully, and in detail gone over this case, both as to the facts and law applicable thereto. Out of the very great deference we feel for all the very learned counsel for appellees, it certainly ought to be clear to them, after this review, that they have fallen into what is, perhaps, a popular misconception of the effect of section 3074 of our Code, under our decisions. This section might have provided, if the legislature had preferred the Pennsylvania system, that no assignment should be made by the contractor which would

be good against the materialmen; but it did not so provide. It might have expressly given the materialmen and the subcontractors, as the Pennsylvania system does, direct liens, equal in all respects to the lien of the original contractor; but it expressly refused to do that. There is nothing in the contract between Jaffray and Cameron stipulating that any such assignment should not be made. In short, this whole case is completely and perfectly disposed of under the statute, by the decision in this state of *Herrin v. Warren & Mobley,* 61 Miss. 509, which has stood from that day till this as the unquestioned law of this state, in construction of our mechanic's lien laws. The learned counsel for appellees certainly did not overlook this case; but it is equally certain that they have wholly failed to give it its full effect and force. To hold any other view than we have in this opinion, on our particular statute, would be to squarely overrule that case. It is idle to indulge in the loose view, in which counsel for appellees seem to indulge, that there is some sort of general spirit or purpose pervading this statute which gives to the appellees a prior right under the statute, under the facts of this case. We apprehend that the legislature, in this carefully drawn section 3074, have fully and explicitly and plainly enacted just the law they wanted—the New York system; and to do what appellees ask us to do in this case would be to read into the section, by judicial legislation, something not only not in it, but something which is in direct conflict with its express provisions, and its declared policy. This, of course, we decline to do.

It follows that the judgment of the court below was erroneous, and the suggestion of error is overruled.