### TEXAS BUILDERS' SUPPLY COMPANY v. NATIONAL LOAN AND INVESTMENT COMPANY ET AL.

Decided December 20, 1899.

**1. Equitable Assignment of Fund—Unaccepted Order.**

Where one who has arranged for a loan of money with which to pay for the building of a house gives to the contractor who has done the work an order on the loan company for a balance of the money still remaining in its hands, the fact that such order is not accepted because of garnishment process served on the company will not prevent the order from operating as an equitable assignment of the fund.

**2. Same—Mechanic's Liens—Subcontractor's Claims—Garnishment.**

The fund so assigned to the contractor nevertheless was still subject to garnishment at the instance of unpaid subcontractors whose liens had, under the statute, priority over that of the contractor on the property which he had undertaken to deliver to the owner free of any liens thereon. Rev. Stats., art. 3305.

APPEAL from Bexar. Tried below before Hon. J. L. CAMP.

*Davis & Williams,* for appellant.

*Floyd McGown, Clark, Ball & Fuller,* and *J. D. Guinn,* for appellees.

JAMES, CHIEF JUSTICE.—W. H. Hunt and wife borrowed from the National Loan and Investment Company money for the purpose of erecting a building, and contracted with Eugene Davis to erect the building.

Davis finished the building, and thereupon Hunt paid him the remainder then due on the contract by giving him his check on a bank for a small amount, and an order on the National Loan and Investment Company for the balance it then held of the loan, to wit, $1811.30. The order was as follows:

"Geo. C. Eichlitz & Co., Local Treasurer National Loan and Investment Company, Detroit, Michigan: Eugene Davis has completed his contract on our building, and I have paid him excess on said contract, and this is an order on you, as treasurer of the company, to pay the balance in your hands, to wit, $2130.06, in full payment of said contract. W. H. Hunt, Mattie M. Hunt, per W. H. Hunt, San Antonio, Texas, August 30, 1898, $2130.06—$300, paid Aug. 20th, $1839.06—$27.75 insurance which Davis had charged, leaving balance $1811.31."

The order was immediately presented, but not paid, nor was there, it seems, an acceptance of it. The Texas Builders' Supply Company, a creditor of Eugene Davis, garnished the Loan and Investment Company, which answered, in substance, that at the time of service of the garnishment it had in its possession, as the property of W. H. Hunt, $1811.31, the balance of a sum of money borrowed from it by said Hunt and wife, and that at the time of the service there had been presented to it and there was then in its possession a written order from said Hunt and wife, directing this defendant to pay this sum of money to the defendant, Eugene Davis; therefore it answered that it was informed and believed it was indebted to Eugene Davis in said sum. Further answering, it stated that at the time of receiving the said order and prior to the garnishment, it learned that certain persons named were asserting some claim to the money, or lien upon the premises, and upon which this garnishee had loaned the money to Hunt and wife, a portion of which is now in its hands, but assigned as aforesaid to Eugene Davis by W. H. Hunt, that it holds said sum in trust for the person or persons to whom the same rightfully belongs, and tenders same into court and stands ready to pay same to such person or persons as the court may direct; and prays that said persons be made parties, including W. H. Hunt and wife, and be required to litigate their claims to said fund, and that upon final hearing it have judgment discharging it from further liability to the Texas Supply Company or to Eugene Davis, and protecting it against the claim or claims of each and all of said persons, etc.

The said persons alleged to have a claim on such fund became parties, and two of them, viz., F. P. Walsh and Peter Younger, filed pleadings, asserting claim to the fund by reason of being unpaid subcontractors under Davis, and also claiming a lien on the property. We think it unnecessary to more fully state these pleadings.

The court rendered judgment awarding the fund to the claimants, F. P. Walsh and others, declaring their claims to be a lien on the property and on the fund, and that their right to said fund was superior to that of the plaintiff in garnishment, and the garnishee having paid the fund into court, it was directed that it be distributed in a certain manner among

said persons, and each of these was awarded a judgment against Eugene Davis. The decree further directed that the payment into court by the garnishee was a full satisfaction of all said liens, and that if any of said judgments were not satisfied, execution should issue against Eugene Davis therefor. The Texas Builders' Supply Company appeals from the judgment.

· From the briefs filed and from the court's conclusions it is apparent that the judgment was based upon the conclusion that the order in question was not an assignment of the fund, because not accepted, and that article 3305, Revised Statutes of 1895, gave the subcontractors a lien on the fund, it being found by the court that Hunt and the loan and investment company had actual notice of the claims when the order was given.

We are of opinion that the order was an equitable assignment of the fund. The rule applicable here is not to be confounded with the principle announced in House v. Kountze, 17 Texas Civil Appeals, 402, which we think applies only to checks or drafts in banking transactions. That the order in question was an assignment of the fund it referred to, and authorized Davis to sue thereon, has been frequently decided in this State. Harris County v. Campbell, 68 Texas, 22; Clark v. Gillespie, 70 Texas, 516; Stillson v. Stevens, 23 S. W. Rep., 322.

Article 3305 of the Revised Statutes does not create any right in favor of the persons it refers to, to the fund in question. Its purpose is to aid such persons in respect to a lien on the property, and to give them a lien, in the proper case, after the owner has paid the contractor in full. The retention by the owner of the unpaid contract price which this and succeeding articles authorized, is to afford him a means of protection against the threatened lien. He may use such fund to satisfy such claim, and thereby avoid liability for it or a lien upon his property. But he is not restrained by said article from using the funds as he may please, except at the peril of having himself or his property subjected to a charge to that extent. The lien is not on the money or funds in the owner's hands, or under his control, but upon his property.

But the facts of this case are peculiar, and it appears to us that the judgment rendered is the correct one from the standpoint of the garnishee, he being entitled to the rendition of such judgment as will fully protect him from future liability, loss, or damage, upon being required by the court to pay over money in its hands. Its rights are to be carefully guarded, and it is to be charged only upon its actual relation with its creditor as it existed between them. 2 Shinn on Att., sec. 472.

It appears that Hunt and wife entered into a building contract with Eugene Davis to obtain the erection of this house, they giving him a note for $12,000, the consideration for the work, and he obligating himself to complete the building and deliver it to them free and clear of all liens, claims, or incumbrances, except the particular lien of the contract. Davis assigned this note, contract, and lien to the loan and investment company for the purpose evidently of obtaining the funds with which to per-

form his contract, the same to be paid to him as the work progressed, binding himself that the note was a first lien on the property. When the building was finished, the order in question was given for what was unpaid by the loan and investment company to Davis, of said sum of $12,-000. The money was really a loan by the loan and investment company to Hunt to be used in constructing the house, as is shown by all the evidence, although the transaction took the form above expressed. This exhibits the relation of parties to the fund and to the property.

We think that the loan and investment company stood in the same position as Davis as to any liens that might arise from this work against the property. Suppose Davis had not assigned his lien, we think it clear, in such a case, that if he failed to pay his subcontractors and thereby caused such liens to attach to his security (the property in question), these liens, under the circumstances, would have been superior to his. And such liens would take precedence over the right of his assignee, who really, in this respect, stands in his place. Railway v. Griffiths, 88 Texas, 575.

If, as found by the court, the claimants were entitled to liens on the property, and these being prior liens as we have explained, the loan and investment company would have had a good defense against Davis had he been suing on this order, or for the balance, until he removed these liens. By contract with the loan and investment company that the contract lien was a first lien for the full sum of $12,000, he would be responsible to it if his defaults created other liens which in law would take precedence.

Besides, in his contract with Hunt he had contracted to deliver the property free of all liens, incumbrances, etc. The loan and investment company, by its relation to Davis, had a right to have this obligation performed, and in view of these facts, it was entitled to have the fund in question paid to discharge these liens, and it was the duty of the court, upon such a state of facts, to so apply the fund, if that course seemed necessary to protect the garnishee against them. It may also be said that the fund had not been actually paid to the contractor, the owner having merely given an order for it, and if the order placed it beyond the recall of the owner, it is not so with the garnishee who has a direct interest in its application to discharge these claims.

The court adjudged that the claims of subcontractors and others were a lien on the property, as well as on the fund. That the statute gave them a lien on the fund we do not believe. It may be so in equity.

The pleading of the garnishee stated that when the order was presented to it, it had notice of the claims of the persons it asked to be made defendants, which answer was introduced in evidence by plaintiff, and the court found as a fact that it had been notified of these claims. Hunt testified that before he gave the order the contractor, Davis, had rendered him a statement of the claims due. His testimony shows that he knew claims were due in excess of what was unpaid on the contract price, and that he understood Davis was to settle them. There is foundation in the testimony for the finding that both Hunt and the loan and invest-

men company had notice of the claims before the order was drawn. We understand from the case of Padgett v. Construction Company, 51 Southwestern Reporter, 529, in which the Supreme Court refused a writ of error, that where there has been actual notice of a claim, the written notice is not necessary. We understand also from that case and from Bank v. Taylor, 91 Texas, 78; Strang v. Pray, 89 Texas, 525, and Bassett v. Mills, 89 Texas, 162, that the Constitution gives the lien, and the provisions concerning notice and registration of the claim are important only for the protection of the owner of the property, or purchasers or incumbrancers. The owner and his depository were found to have had actual notice of these liens, and there are no innocent purchasers or lienors to be affected.

The first assignment of error makes certain objections to the introduction in evidence of the recorded liens of T. P. Walsh and Peter Younger, two of the claimants. This evidence, from what has been stated, was of no importance in establishing the liens.

We conclude that the judgment subjecting the fund to the payment of the claims was the proper one, in view of the circumstances and rights of the garnishee, as developed by the evidence.

*Affirmed.*

Writ of error refused.