In Clappier et al. v. Banks et al., 11 La. 595, it was said:

"In an action of revendication, persons claiming to be instituted heirs under a will, alleged to be lost or destroyed, will not be allowed to prove its existence, loss, and contents in the district court, when it has never been admitted to probate."

See, also, State ex rel. Remendo v. Judge, 17 La. Ann. 189.

Counsel for plaintiffs says, in his brief, "the petition to probate the will was filed after this suit."

We must, however, deal with the case before us upon the basis of the allegations contained in the petition, and, so doing, in view of the law and precedents cited, conclude that the plaintiffs have no present standing in court for the purposes of the demand made by them.

The judgment appealed from is, therefore, affirmed, at the cost of the appellants.

---

(33 South. 912.)

No. 14,346.

SIMPSON et al. v. CITY OF NEW ORLEANS et al.*

(Feb. 16, 1903.)

MATERIAL LIEN—RIGHTS OF PARTIES—PAYMENT—NOTE—FORGED INDORSEMENT.

1. A furnisher of materials with privilege on a building may look to the amount due to the contractor, his debtor, under the building contract, and is not bound to have recourse to the surety on the contractor's bond; and it makes no difference that the contractor has assigned his right to payment under the contract.

2. Where a debtor makes a note to his own order, and indorses it, and forges indorsements on the note, so as to give it negotiable value, the signature of the maker himself being of no negotiable value, and thereupon delivers the note to his creditor in payment, and the latter indorses and negotiates the note, the transaction does not constitute a payment. The creditor is bound to restore the amount received from the negotiation of the note. As obtained

on the note delivered to him by the debtor, he at no time had the right to keep the money. If it so happens he cannot return same, his obligation to refund stands in the place of the money itself.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; Thomas C. W. Ellis, Judge.

Action by O. H. Simpson and others against the city of New Orleans and others. Judgment for plaintiffs, and certain defendants appeal. Affirmed.

Buck, Walshe & Buck and Dufour & Dufour, for appellants Germania Nat. Bank and George L'Hote. William S. Benedict and John G. Robin, for appellees. Edward L. Simonds, for appellee W. A. Simonds.

PROVOSTY, J. Charles H. Charlton, Jr., contracted with the city of New Orleans for the construction of two schoolhouses, and gave bond for the faithful performance of the contract; and contract and bond were duly recorded, all according to law.

The bricks, lime, cement, etc., for the buildings he obtained from Charles A. Kent on credit. Shortly after beginning work on the buildings, and while his account for materials was running with Kent, he assigned to George L'Hote all his rights to payment under the contract, and L'Hote made a subassignment of the same rights to the Germania National Bank.

Kent recorded his claim for the preservation of his furnisher of materials' lien, and shortly thereafter went into bankruptcy; and the present suit is instituted by O. H. Simpson and others, the trustees of his bankruptcy, to make good the claim for said materials so furnished.

The defendants are Walter A. Simonds, the city of New Orleans, George L'Hote, and the Germania National Bank. Between plaintiffs and Simonds there is no contest. Plaintiffs admit the claim of Simonds, and concede to it a right of preference. The city of New Orleans also is eliminated from the controversy. By agreement of parties, the balance due by her was paid over to the Germania Bank, to be held subject to the decision of this suit, and she was released from all further responsibility. L'Hote and the Germania Bank stand together, and may be considered as one party.

---

*Rehearing denied March 16, 1903.

After pleading the general denial, the defendants George L'Hote and the Germania National Bank allege the transfer made to them by Charlton of his right to receive payment under the contract, and then proceed as follows:

"Further answering, defendant avers that the said assignments were made to the knowledge of the said Kent, and the said Kent acquiesced therein, and that said Kent cannot be heard at this time to question defendant's title, nor that of his assignee, to the payments resulting from said assignment.

"Further answering, defendant avers that, if the said Kent did furnish the said Charlton with any of the material charged herein, he furnished same with the knowledge that the said Charlton had assigned his payments to defendant, and defendant had, in turn, assigned same to the Germania National Bank, and acted solely on the personal responsibility of the said Charlton and the surety on the bond of the said Charlton, who had to agree to the assignments to defendant; and defendant denies the right of the said Kent or his trustees to now assert any pretended lien superior to the claim of your respondent and his assignee, the Germania National Bank.

"Further answering, defendant avers that he is informed, and so charges, that if the said Charlton was at any time indebted to the said Kent for any of the material as alleged, that the same has been paid in full."

The record does not show that Kent knew of the assignment; still less that he agreed to look exclusively to Charlton personally and to the surety on the bond. Besides, these assignees of Charlton stand in his shoes, and cannot invoke any defenses which he could not have invoked. "Nemo in alium transferre potest jus quod ipse non habet." The first and second defenses must, therefore, fail on the facts.

The third defense is founded on the following facts: On May 15, 1900, Charles H. Charlton, Jr., delivered to Kent notes made by Charlton to his own order, and by himself indorsed, and bearing the indorsement of L'Hote & Co. and of Charles H. Charlton, Sr. Kent put upon the notes his own indorsement, and negotiated them. Of the proceeds he kept $3,278.36, and turned over to Charlton, Jr., the balance. At the same time he executed and delivered to Charlton, Jr., the following receipt:

"May 16th, 1900. Received from C. H. Charlton, Jr., account material furnished for school buildings corner Carrollton avenue and Webster and Perrier, and Erato, between Dryades and Baronne, $3,278.36, the same having been paid by various notes endorsed by L'Hote and Co. and C. H. Charlton, balance of said notes having been refunded to C. H. Charlton, Jr. [Signed] C. A. Kent."

Of and concerning this transaction and this receipt Kent testifies as follows:

"Q. When you received the notes, you discounted them in bank, and got cash for them? Ans. With the distinct understanding that when the notes were paid his account would be credited for them. In other words, it was an accommodation for the meanwhile.

"Q. How were these exact figures, $3,278.-36, arrived at? Ans. That is the amount I retained out of the notes, which I was entitled to as much as he, as I had indorsed the notes also; and it was agreed that, when those notes were paid, that that amount would be credited to his account. When all the notes were out of the way, that would be the amount credited to his account."

When the notes thus discounted fell due, other notes precisely similar in the matter of signature and indorsement, but larger in amount, were delivered by Charlton to Kent, and were in the same way indorsed and negotiated by Kent, and part of the proceeds used in taking up the outstanding notes, and the balance turned over to Charlton. This process was gone through with three or four times, until finally it came out that the indorsements of L'Hote & Co. and Charles H. Charlton, Sr., on the notes were forgeries. The last notes issued were for $8,400. Charlton, Jr., had no credit. The situation, therefore, was that the only genuine name on the notes entitled to credit was that of Kent. Kent used the $3,278.36 in his business, and has put down in his schedule in bankruptcy the parties to whom he discounted the last series of forged notes.

It is argued that the $3,278.36 must go as a credit upon the account between Charlton and Kent, and reduce pro tanto the privilege of Kent on the contract price of the buildings for the materials furnished by him.

Such was not the agreement of the parties. The testimony of Kent given above was not contradicted by Charlton, although the latter was present in court when the testimony was given. The agreement was that the amount should be credited to the account when the notes would be paid. The idea was that the notes would be taken up with the payments which Charlton was to receive under the contract with the city. Since the notes have never been paid, the amount cannot be credited to the account.

But apart from any agreement on the subject, there is no payment. The $3,278.36 were not Charlton's money, and by no process of reasoning can they be made to go toward paying his debt. The money belonged to the banks from which it came, or to Kent, on whose signature it was obtained. All that Charlton gave to Kent was his worthless signature. If Kent were solvent and responsible, he would return the money to the banks, and the situation would be just as if the note transaction had never taken place. He being insolvent, his obligation to return the money has gone to the banks in place of the money itself, and the situation is the same as if the money had gone. The receipt of the money could have operated as a payment only if he had received it with the right to keep it. If my debtor pays me with somebody else's money, which I must return, he does not pay me at all. He merely goes through the empty form of paying me. If the transaction upon which my debtor relies to show payment of his debt to me has the effect of imposing upon me a liability for a like amount to a third person, there may be a novation, but there certainly is no payment; and novation is not pleaded in this case, and all intention to rely upon same is disclaimed. The Germania Bank, as assignee of Charlton, stands in his shoes, and is in no better position to invoke the transaction as a payment than Charlton himself would have been if the assignment had not been made. Of however little value commercially Charlton's signature was, the money was obtained partly on it. Therefore, if Kent had retained the entire amount derived from the note negotiation, the situation might have been that, until he had restored to Charlton the forged documents on which the money had been obtained, he would

have been in no position to say that he had not obtained the money from Charlton, or on the strength of the notes furnished by Charlton. But Charlton himself got by far the greater part of the money, and he obtained it on Kent's signature, and Kent's signature is also outstanding on the notes. Under the circumstances, the parties are quits in the matter of returning signatures, and the assignees of Charlton stand in his shoes.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be affirmed.