**BRIDGEPORT MACH. CO. v. FIRST NAT. BANK OF BRECKENRIDGE, TEX., et al.**

**No. 901.**

Court of Civil Appeals of Texas. Eastland.
Nov. 6, 1931.

Rehearing Denied Dec. 11, 1931.

Ben J. Dean, of Breckenridge, for appellant.

Goggans & Allison, of Breckenridge, for appellee.

FUNDERBURK, J.

Lacey contracted with Godley Oil & Gas Company to drill an oil well for the latter to a specified depth for a stipulated price. The contract provided: "No part of the contract price mentioned shall in any event become due or be paid until said well shall be completed to the depth above required," etc. Another provision was: "* * * The party of the first part (i. e. the contractor) shall fully protect, indemnify and save the party of the second part harmless against any and all claims, demands or liens growing out of or connected with the performance of this contract, or operations thereunder, and any sum due hereunder may be retained by the party of the second part until satisfactory evidence has been produced that such demands, claims or liens have been fully settled, satisfied and discharged." About a week after the contract was made, and after the work was begun, the contractor assigned to the First National Bank of Breckenridge all sums of money in or that might become due to the contractor under said contract. Thereafter the Bridgeport Machine Company furnished the contractor, Lacey, materials used in the drilling of the well amounting to $1,020.90, before it or the owner, Godley Oil & Gas Company, had any knowledge, actual or constructive, of the assignment by the contractor to said bank. The Bridgeport Machine Company gave due notice to Godley Oil & Gas Company of its furnishing said materials, and in due time and manner took all requisite steps to fix and secure a materialmen's lien, if there was anything then or thereafter owing by the owner of the lease upon the contract by which to measure the amount, if any, of such lien. Upon completion of the well, and subsequent to the notice and other proceedings for fixing of the materialmen's lien, there was due upon the contract price the sum of $16,800 which was thereafter paid, except the sum of $2,000, which was withheld because of the demand and claim of lien of the Bridgeport Machine Company.

This suit was brought by the Bridgeport Machine Company against B. C. Lacey, the contractor, and Godley Oil & Gas Company, the owner of the lease, upon the account for said materials, and to foreclose the materialmen's lien. Godley Oil & Gas Company answered, acknowledging that it had on hand the sum of $2,000 due on said contract, and tendered into court a sufficient amount of money to satisfy the claim of the plaintiff. Lacey did not answer. The First National Bank of Breckenridge intervened, asserting claim to the $2,000 under its assignment. Defendant Godley Oil & Gas Company answered the petition of intervention by a general demurrer which was overruled, and exception taken, and by special pleas. In part, the special pleas were to the effect that, by reason of the provisions of the contract hereinabove quoted, the said defendant was not due to pay the balance of the contract price unless and until the demand of the plaintiff was satisfied, and evidence thereof produced. Upon the trial of the case with a jury, the court instructed a verdict in favor of the intervener as against all other parties for the funds in question, and gave plaintiff judgment against Lacey for the amount of its demand, denying a foreclosure of the alleged lien, and canceling the purported lien as a cloud upon the title of defendant Godley Oil & Gas Company. Said judgment expressly provided that it was without prejudice to the right of intervener to claim as against Godley Oil & Gas Company the remainder of the sum of $2,000. The plaintiff has brought the case here by appeal from said judgment.

Appellant first insists that the pleading of the intervener, First National Bank of Breckenridge, was subject to its general demurrer, in that it failed to allege either that the plaintiff or the Godley Oil & Gas Company had any notice of its alleged assignment. The proposition embodying this contention we overrule. The rights of the parties as presented by the pleadings involved no question of notice. If the assignment was effective at all as against the plaintiff, it was not so because of any notice or want of notice to either the plaintiff or the Godley Oil & Gas Company. No notice was required except to the Godley Oil & Gas Company to prevent its making payment to Lacey instead of his assignee. Since no such payment was made, no question of notice is presented. Hess & Skinner Engineering Co. v. Turney, 110 Tex. 148, 216 S. W. 624.

Appellant's next contention to the effect that, under the undisputed facts, the court erred in adjudging the funds impounded in the hands of Godley Oil & Gas Company to the intervener, First National Bank, upon its

claim of a prior assignment, and as against plaintiff upon its claim of a materialmen's lien, we have concluded should be sustained.

Preliminary to a discussion of the reasons which lead us to such conclusion, it may be remarked that, accurately speaking, the question presented is not one of *priority* as between a materialmen's lien and an assignment. If the lien exists, the assignment must yield. If the assignment is sustained, it must be, not because it has priority over the lien, but because of the nonexistence of the lien.

The' lien claimed, if it exists, is authorized by the provisions of R. S. 1925, chap. 3, title 90 (articles 5473-5479), providing for liens on oil and mineral property. There is no basis for a contention that the lien does not exist unless it be because of the operation of one or more of three statutory provisions which are designed to protect an owner of property in his right to contract for improvements thereon, and to have such contract measure the full extent of his personal liability, and that of his property. The material portions of these three statutes we quote as follows:

First. "Nothing in this chapter shall be construed to fix a greater liability against the owner of the land or leasehold interest therein than the price or sum stipulated to be paid in the contract under which such material is furnished, or labor performed." R. S. 1925, art. 5478.

Second. "Nothing in this law shall in any manner affect the contract between the owner and original contractor as to the *amount, manner or time of payment* of said contract price." (Italics ours.) R. S. 1925, art. 5468.

Third. "But the owner shall in no case be required to pay, *nor his property be liable for* [italics ours], any money that he may have paid to the contractor before the fixing of the lien or before he has received written notice of the existence of the debt." R. S. 1925, art. 5463.

Assuming, without here deciding, that all of these statutory provisions are applicable in determining the existence of a lien under the facts of this case, as above stated, the concrete question presented for decision is whether or not it is necessary to deny the existence of a lien in order to give full effect to said provisions. If the existence of the lien asserted would be contrary to any of said provisions, there is no lien, and consequently no obstruction to the full operation of the assignment. On the other hand, if said lien can exist, without violating any of said provisions, then it must be held so to exist. If the question was one of first impression, we would consider discussion unnecessary further than to observe that it is manifest from a reading of said statutory provisions, in the light of the facts presented by this record, that no right of the owner sought to be protected by any of said statutes

would be violated by the recognition and enforcement of the lien asserted in this case.

In order to give effect to said statutory provisions, it has been held that the owner may pay the whole of the contract price in advance. He may make payment in something other than money. He may make payment by the substitution of his executory obligation to a third party for a like amount of the contract price of the improvements. In short, at whatever time and in whatever manner he actually makes a bona fide payment upon the contract price of the improvements, no laborer or materialman, not having previously given the required notice of his claim, can have any lien to include any amount of such payment. Once a definite amount of the contract price is so novated or satisfied, and at a time when no notice of a claim of lien has been received, that the contractor, or one succeeding to his rights under the contract, can never hold the owner to a personal liability to pay that particular amount of the contract price as such, then there has been a payment upon the contract price, the amount of which can never thereafter serve to determine the existence or amount of a materialman's or laborer's lien. A familiar example is to be found in cases where the contractor has given an order in favor of a third person upon the owner, which has been accepted. The acceptance constitutes a direct liability of the owner to the third person, which, if so intended, is at once a payment pro tanto upon the contract price. That amount of the contract price can never thereafterwards be recovered as such from the owner. Such an order unaccepted, while *good perhaps as an equitable assignment of* the contractor's interest in that amount of the contract price, is not a payment upon the contract price by the owner. The distinction is important. The accepted order is a payment, and, if made at a time when the owner is without notice of liens, the amount thereof cannot, upon subsequent notice of liens, be regarded as a part of the contract price due and unpaid. On the other hand, if, before acceptance, due notice is given to the owner of a lien, then the owner will accept or pay at his peril. This because it is not necessary, under such circumstances, for him to either accept or pay, and it violates no right of his given in the statutory provisions above quoted, to hold his property to a liability under such circumstances. The charging of his property with liability under such conditions is the result of his voluntary act in making payment upon the contract price after notice.

The utmost extent of the limitation which said statutory provisions impose upon the right of a laborer or materialman by compliance with the law to secure a lien, may be stated to be that *such right is limited only to the amount due and unpaid upon the con-*

*tract price of the improvements at the time of notice to the owner.* If the contractor has made no assignment of the contract price, or any part thereof, it would be just as accurate to say that the right to so secure a lien is limited to the amount of the contract price which, at the time of notice, *is due to the contractor.* Because more often than not any balance due upon the contract price is *due to the contractor,* it is not at all surprising that courts in many cases, in speaking of such limitation, have said that the existence and amount of a lien was dependent upon there being some portion of the contract price *due to the contractor.* Such a statement, however, is not accurate as applying to a case where, at the time of legal notice, there remains due and unpaid a part of the contract price, but same, by reason of an assignment, is not *due to the contractor.*

So far as our investigation has disclosed, no court in this state, prior to the decision in Thelander v. Becker (Tex. Civ. App.) 199 S. W. 848, ever recognized any narrower restriction upon the right of a laborer or materialman, by compliance with the statutes, to fix and have a lien, than to limit the amount of the lien, if any, to the amount of the contract price unpaid at the time of notice. Because in the cases where the unpaid portion of the contract price was due by the owner to the contractor, it was stated that the lien was limited to the *amount due the contractor,* it was deduced in the last named case that, where the contractor had made an assignment to a third party before notice of a lien to the owner, no lien could exist, because no amount was *due to the contractor.* The only cases cited in support of the holding were cases in which the owner had accepted orders of the contractor to the owner to pay third persons. That these cases supported no such conclusion follows from what has already been said. Those cases involved payments and not mere assignments.

The logical effect of the holding in Thelander v. Becker, is that, although the owner may owe every dollar of the contract price of the improvements at the time a laborer or materialman, with all possible diligence, gives notice of the claim of a lien and follows same up by every step required by law to secure his lien, yet a third person who may have contributed nothing toward the performance of the contract can take all the money and leave the laborer or materialman, who by his labor or supply of materials has assisted in the performance of the contract (the thing necessary to perfect the right of the contractor or any one else to be paid anything whatever), wholly without a lien and entirely dependent upon the solvency of the contractor for the payment of his debt. It seems to us that nothing but the most compelling reasons could justify such a construction of the statutes. We are of opinion that no such reasons exist.

The statute purporting to create such liens certainly does not, in any express terms, provide that the lien shall be for only such amount, if any, of the contract price, as is due by the owner *to the contractor.* All that the restrictive statutes quoted above require, is that the owner be not denied his right to pay only the amount he has contracted to pay, to pay same in the manner and at the time provided in his contract, and that his property shall never be held liable for any amount of the contract price which he, without notice of the claim of liens, has at any time paid. How then can it be said that the statutes imply that such right to liens is limited to the amount of the contract price due *to the contractor?* To us it is quite plain that it is not necessary to the protection of any of the rights of the owner designed to be protected by said statutes that the existence of a lien be denied because of a mere assignment by a contractor of the contract price of improvements.

It is true, many cases have been reported wherein the assignees of contractors have, as to their claims, prevailed over lien claimants. In 40 C. J., 306, § 399. it is said: "On the other hand, except in a few jurisdictions, it is the rule that, where, before the notice or claim of lien is served on the owner or filed, the contractor assigns his claim against the owner, the assignee has the prior right to the fund." A long list of cases is cited in support of the text under note 31. The contra cases in the "few jurisdictions," cited under note 30, are: Carter v. Brady, 51 Fla. 404, 41 So. 539, 541; Beardsley v. Brown, 71 Ill. App. 199; Simpson v. New Orleans, 109 La. 897, 33 So. 912; Bourget v. Donaldson, 83 Mich. 478, 47 N. W. 326.

We deem it sufficient to refer to but two of the cases; one of each kind. The case of Spengler v. Stiles-Tull Lbr. Co., 94 Miss. 780, 48 So. 966, 19 Ann. Cas. 426, by the Supreme Court of Mississippi, in which an assignment prevailed over the claim of a lien, is very interesting and instructive. We refer to it, not only because it presents the entire problem in an illuminating way, but it happily furnishes the explanation why that case and others are inapplicable to the question under consideration. The Mississippi court distinguished Carter v. Brady, supra, and the other contra cases above cited in said note 30, by pointing out that, in the last-named cases, the lien was given upon the *land* or *property* of the owner and not merely upon a *fund.* Of course, if the statute which creates a lien in terms confines it to the amount, if any, which at the time of notice, is *due to the contractor,* a prior assignment would prevent the existence of a lien. Such was the effect of the statute considered by the Mississippi court,

and the same is no doubt true in many, if not all; of the other cases in which such assignments have been held to prevent the existence of liens.

In the case of Carter v. Brady, one of those distinguished by the Mississippi court, it was held that, under the terms of the Florida statute, an assignment would not prevent the operation of a lien. Said that court: "Under our statute an assignment by a contractor of the balance to become due under his contract for building a house will not defeat the materialman's lien served before the completion of the building and before the owner has actually paid the balance to the assignee; the balance due being in excess of the materialman's lien." Among the cases cited in support of this holding was Texas Builders' Supply Company v. National Loan & Investment Co., 22 Tex. Civ. App. 349, 54 S. W. 1059, 1060, and Jennings v. Willer (Tex. Civ. App.) 32 S. W. 24. The Florida statute under consideration, like ours, gives the lien, not upon a fund, but upon the improvements, including the land. Upon this point, it was said in Texas Builders Supply Co. v. National Loan & Investment Co., supra: "The lien is not on the money or funds in the owner's hands or under his control, but upon his property." See, also, to the same effect, A. A. Fielder Lbr. Co. v. Smith (Tex. Civ. App.) 151 S. W. 605; Fullenwider v. Longmoor, 73 Tex. 480, 11 S. W. 500. It would appear then that Texas Builders Supply Co. v. National Loan & Investment Company, supra, was properly cited as an authority supporting the Florida decision. The facts of this case were that a contractor assigned the note (for the contract price of the improvement), together with the contract and lien, to a loan company to provide a fund to enable the owner to pay for the building or improvements contracted for; the proceeds of the note being held by the loan company to be applied for that purpose. Upon completion of the work, the owner gave a check and order on the assignee of the note for the balance due the contractor. Before payment, the assignee was garnished by another creditor of the contractor. The garnishee, pleading its notice of the existence of claims of materialmen's liens, impleaded the owner, the contractor, and the lien claimants. Said the court: "We think that the loan and investment company [that is, the assignee of the note and garnishee] stood in the same position as Davis [the contractor] as to any liens that might arise from this work against the property. *Suppose Davis had not assigned his lien, we think it clear, in such a case, that, if he failed to pay his subcontractors, and thereby caused such liens to attach to his security (the property in question), these liens, under the circumstances, would have been superior to his; and such liens would take precedence over the right of his assignee, who really, in this respect, stands in his*

*place."* (Italics ours.) In the other case (Jennings v. Willer (Tex. Civ. App.) 32 S. W. 24, 28), Judge Stephens of the Fort Worth court said: "We are of opinion that a contractor cannot, by transferring in the manner shown by this record the debt to become due to him under a contract for the construction of a house, thereby deprive material men, having no notice of such assignment, of their statutory right to fix liens on the property, at least, under a contract like this, which provided that the contractors themselves could not recover the balance due without first satisfying the liens. Roe took the assignment in question subject to this condition."

We adopt this statement as applicable to the case here, and as correctly expressing our views, except the reference to materialmen "having no notice of such assignment." As we have already said, in disposing of another proposition, the fact of notice or no notice is immaterial. An assignment like the one in question is not subject to the registration laws. The assignee succeeds to such rights and only such as the contractor, in the absence of any assignment, would have. If the contractor, having made no assignment, could enforce payment of the unpaid part of the contract price as against the claim of a lien on the property by a laborer or materialman, then the assignee, in case of assignment, could do likewise, regardless of having given no notice of the assignment. On the other hand, if the contractor could not, neither could his assignee, even though the laborer or materialman had notice of the assignment. To hold that the existence or not of a lien is dependent upon the fact of notice of the assignment, would be to assume that the lien arises from some principle of estoppel, instead of being, as it is, created by statute. How could notice of an assignment be made effective? Suppose a materialman, before delivering materials, made inquiry and satisfied himself that all the unpaid part of the contract price was then due to the contractor. What would prevent the contractor, a week later, from making an assignment which would render such information wholly valueless?

The lien which the statute gives a materialman is superior even to that given the original contractor. As said by the Supreme Court in Wilson v. Sherwin-Williams Paint Co., 110 Tex. 161, 217 S. W. 372: "These statutes embody the just conception that the rights of the contractor are inferior to those of the materialman." It is expressly provided by statute that, "All subcontractors, laborers and material men shall have preference over other creditors of the principal contractor or builder." R. S. 1925, art. 5464. This provision alone, it seems to us, would require the holding that the contractor could not make any assignment to one of his creditors not amounting to a payment on the contract

price that would preclude the possibility of a materialman fixing his lien. And certainly it would be a strange holding that, although he could not make such an assignment to pay a materialman who had assisted him in constructing a building, whereby the contractor was enabled to earn any money whatever under the contract, yet he could nevertheless make such an assignment to one not a creditor, and who had neither assumed nor performed any of the contractor's obligations under the contract.

If the decision in Thelander v. Becker, supra, be susceptible of the construction that it determined nothing but that the negotiation of a note given for a part or all of the contract price of improvements constituted a payment pro tanto of so much of the contract price, then it is distinguishable from this case, and wholly without application to the question presented here. If, however, that decision be grounded on the theory that the liens could not attach, simply because the balance due on the contract price was not due to the contractor, but to an assignee, we are unwilling to follow it or any subsequent case citing it in support of a like holding. If the cases are to be distinguished on the basis suggested, we do not wish to be understood as assenting to the correctness of the proposition that a mere assignment of a note, given to a contractor to evidence an indebtedness due for the services of the contractor in making improvements under a contract, constitutes, as a matter of law, a payment of the indebtedness. That question is not before us for decision.

It is not believed that any of the views expressed is in conflict with Campbell v. Hildebrandt, 68 Tex. 22, 3 S. W. 243. That case dealt with a question of priority between an assignment and the right of a materialman, which right was, at the time, dependent upon, and limited to, R. S. 1879, art. 3176, before the amendment thereof in 1895. The extent of such right was to require the owner, from and after notice to him, to "retain out of the amount *due such original contractor, if any* [italics ours], the amount of said labor or material furnished for the benefit of the party performing the work or furnishing the material." We have already, at considerable length, endeavored to show that no such limitation upon the right to a lien on the property of the owner exists under the present statutes.

Neither do we think that we are in conflict with Rotsky v. Kelsay Lbr. Co. (Tex. Com. App.) 228 S. W. 558, 560. It is true that in the opinion it is said: "In passing, however, it is proper to say that if any equitable assignments are shown to have attached to funds in Rotsky's hands, at a time when no notice of lien claimants had been brought home to him, such equitable assignments attached to the funds, and impound them for the benefit of the assignees in the order of the priority of date." That this could not have been intended as a determination of the question now before us is well shown by other expressions in the opinion. For instance, it was said: "Whether the money on hand on July 10, 1912, remaining due upon the contract, was chargeable in Rotsky's hands with plaintiff's right, either as equitable assignee or as a lienor, is not disclosed by the record." And again: "It is an impossibility under the pleading and evidence to ascertain the corresponding rights in point of priority among the several interveners, with reference to funds which may have been in the hands of Rotsky at the time of the notice of claims." It seems fairly certain, however, that the court was considering a question of the rights of the parties in and to a fund. At least two of the statutes hereinbefore quoted, namely, articles 5468 and 5478, in no manner restrict the owner from making payment to the contractor or his assignee after receipt of the notice necessary to fix a lien. In other words, the statutes giving the laborer or materialman a lien does not give him any right in a fund as such. The owner incures no personal liability by paying out the money, unless by virtue of still other statutes, which in no way supersede or further restrict the right to a lien on the property upon which the improvements are made. He merely subjects his property to a lien. Sens v. Trentune, 54 Tex. 218; Fullenwider v. Longmoor, 73 Tex. 480, 11 S. W. 500; Texas Builders, etc., Co. v. Loan & Inv. Co., 22 Tex. Civ. App. 349, 54 S. W. 1059; A. A. Fielder Lbr. Co. v. Smith (Tex. Civ. App.) 151 S. W. 606. It is therefore apparent that a decision dealing only with the rights of several claims to a fund can have no authoritative application to the question now under consideration.

But aside from anything else that has been said, we would hold that by the very terms of the contract upon which the money sought to be recovered by the intervener, First National Bank, can be due in any event, expressly providing, as it does, that nothing shall be due or paid "unless satisfactory evidence has been produced that such demands (as the appellant's), etc., have been fully settled, satisfied and discharged," effectually prevents any recovery by the intervener. Aside from any question of a lien, the plaintiff certainly asserted a demand which it was necessary should be satisfied, and proper evidence furnished of such satisfaction before the contractor himself was entitled to recover anything. Certainly we think the assignee could not recover if the contractor, in the absence of the assignment, could not. A part of the evidence necessary to be offered by either the contractor or his assignee to justify a judgment for any part of the contract price for drilling the well was the "satisfactory evidence" that "such demands or claims had

420

been fully settled, satisfied and discharged." Plaintiff's suit was the all-sufficient denial of the existence of that fact. Hence we are of opinion that, under the undisputed evidence, the intervener was not entitled to recover as against the plaintiff.

It being our opinion that the judgment of the trial court should be reversed, that judgment should be here rendered for appellant for the amount of its debt, with interest and costs, and that the amount deposited in court should be applied upon same, and, if insufficient, appellant should have judgment against Godley Oil & Gas Company for the balance remaining, without prejudice to the right of the intervener, First National Bank, to claim the balance, if any, remaining of said $2,000 acknowledged to be due upon said contract, it is accordingly so ordered.

Reversed and rendered.

LESLIE, J. (concurring).

The majority agree to the conclusions reached in the foregoing opinion on the ground last discussed. Under the provision of the contract set out in the first part of the opinion, nothing was due the contractor or his assignee, the intervener, until the appellant's demand had been satisfied. It had not been satisfied and discharged, as the facts conclusively show, and it had a clear preference right over the claims of the intervener. For an authority under a like state of facts, see Jennings v. Willer (Tex. Civ. App.) 32 S. W. 24, set out in the opinion. For these reasons, we agree that the judgment of the trial court should be reversed, and judgment rendered as indicated in the opinion.