## TEXAS & P. RY. CO. et al. v. CITIZENS NAT. BANK IN ABILENE.

### No. 1884.

Court of Civil Appeals of Texas. Eastland.

March 10, 1939.

Rehearing Denied April 7, 1939.

R. S. Shapard and M. E. Clinton, both of Dallas, and Wagstaff, Harwell, Wagstaff & Douthit, of Abilene, for appellants.

Guthrie & Guthrie, of Dallas, and Scarborough & Ely, of Abilene, for intervener.

Smith & Eplen, of Abilene, for appellee.

FUNDERBURK, Justice.

The Texas & Pacific Railway Company contracted with R. H. Locke for certain improvement work on its tracks. As to final payment therefor, the contract, designating the parties as "The Railway" and "The Contractor", provided that "after the Contractor has furnished written evidence satisfactory to the Railway, that he has paid, in full, all amounts that may be due by him to any and all persons who may have performed labor or furnished material and supplies to the Contractor in connection with the work to be done hereunder, the Railway shall pay to the Contractor the full amount earned under this contract." With the approval of the Railway Company, the sums to be earned by the Contractor under said contract were immediately assigned to Citizens National Bank in Abilene.

Of the total sum earned under the contract, $2,259.11 was not paid to the Contractor R. H. Locke, nor to his assignee, the Citizens National Bank in Abilene, because the Contractor had not furnished written evidence to the Railway Company that he had paid in full all amounts due by him to laborers and the furnishers of material and supplies.

This suit was brought by the Citizens National Bank in Abilene against the Texas & Pacific Railway Company to enforce payment of said balance. Frank Parrott, Fort Worth Sand & Gravel Company and the members of F. C. Crane Company, a co-partnership, intervened, claiming, respectively, $555.11, $175.32 and $137.77, for materials and supplies furnished said Contractor in said work. No liens were fixed as security for the price of the materials and supplies furnished by said interveners. The interveners prayed that the judgment direct the Railway Company to pay them the several amounts of their accounts out of said fund withheld from payment to the bank. In a non-jury trial, the court gave plaintiff judgment for said sum of $2,259.11 against the Railway Company; and provided that interveners take nothing.

The defendant and interveners have appealed.

One question is whether the provisions of the contract above quoted gave the furnishers of material and supplies to the Contractor such an interest in the contract as to entitle them to sue upon it. Another and independent question is whether the Railway Company was authorized to withhold payment until the evidence of payment as provided in the contract should be furnished; and as incidental thereto, the question of the authority of the court, in the event the plaintiff was not entitled to recover against the Railway Company, to award recovery in favor of interveners, in pro tanto discharge of the Railway Company's obligation to make final payment to the bank.

■■■ The rule is nowhere better settled, perhaps, than it is in this state that one, not a party to a contract, but which is for his benefit, may maintain suit on the contract in his own right. 10 Tex.Jur. p. 478, sec. 278. When the provisions of a contract concerning which this question arises are unambiguous, the question whether it is made for the benefit of the third person is one of law to be determined from the contract alone. Standard Acc. Ins. Co. v. Blythe, 130 Tex. 201, 107 S.W. 2d 880.

In the instant case the contract is unambiguous. The question is: Do the provisions of the contract include a promise of the Contractor to pay his debts due for materials purchased and supplies used by him in the performance of his said contract?

■■■ We may properly approach this question in recognition of the general rule that only the parties to a contract are the beneficiaries of the promises therein. If, therefore, there are other beneficiaries, that fact must appear from the provisions of the contract. We shall further assume, without definitely deciding, that such provisions must be expressed or necessarily implied. Upon that test we can reach no other conclusion than that the contract under consideration was made for the benefit of the interveners, as well as for the Railway Company.

The contract *necessarily,* we think, implies a promise on the part of the Contractor to pay the debts due the interveners, as the amount and nature thereof was conclusively established by the evidence. That promise is implied from the nature of the condition qualifying the Railway Company's promise to the Contractor to pay him the full amount earned under the contract. That condition did not provide a contingency for reducing the total amount of the contract price of the work. It only provided for a withholding of the payment of the contract price, not an abatement or discharge of it. In stating the terms of such condition to be the furnishing of "written evidence satisfactory to the Railway that he has paid in full all amounts that may be due by him to any and all persons who may have performed labor or furnished materials and supplies to the Contractor in connection with the work to be done hereunder" there was, it seems to us, *necessarily implied* the obligation to pay such debts; for, otherwise, satisfactory evidence of such payment could not be furnished. The contract means the same as if it had expressly provided that the last $2,259.11 of the total amount earned under the contract should not be paid until the Contractor had paid for all labor, materials and supplies, and had furnished satisfactory written evidence of such payments.

It would not be argued, perhaps, that if one of the express promises of the Contractor had been to pay such debts, the contract would not have been for the benefit of the third persons. What is *necessarily* implied from that which is expressed should, in our opinion, be regarded as the full legal equivalent of that which is expressed.

There can be no question of the power of the Railway Company to make a contract which may be for the benefit of third persons. Such would be a contract by which it exacted a promise of a Contractor for him to pay his debts due for labor, material and supplies in connection with the contract job. If a municipal corporation, as held in Mosher Mfg. Co. v. Equitable Surety Co., Tex.Com.App., 229 S.W. 318, has the implied power to exact such promise from a Contractor, where, under the law, no liens could be fixed, we think that the Railway Company would even more certainly have such power, where liens could be fixed.

If the contract expresses, or necessarily implies, the intention to benefit the third persons, then we are unable to see that the question of such intention can be affected by the fact that those intended to be benefited may fail to take steps to fix liens. Why should they incur the trouble and expense of fixing liens if they are sufficiently protected by the terms of the contract containing the provision for their benefit? It is recognized that whether laborers and materialmen may or may not, under the law, fix a lien upon property, is a matter properly to be considered in determining whether a particular contract is one intended for their benefit; but once it is determined that the contract is intended for their benefit, no importance, we think, can be attached to the fact that those having the right to fix liens may fail to do so.

The contract under consideration, it seems to us, shows the intention of the contracting parties to require payment in full of all labor, materials and supply bills, regardless of whether liens be fixed or not. If it was intended to limit the requirement of such payment, why was not the limitation expressed in the contract? And further, if the only purpose of that provision was to afford protection to the Railway Company from liens then it is obvious that it was wholly unnecessary since payment could not have been made in such case until after the time that liens could be fixed. Some effect should be given to the provision. That may be done. The Contractor by furnishing satisfactory evidence that all bills had been paid would thereby have placed the Railway Company under duty to pay the balance due immediately without waiting for the expiration of the time in which liens might be filed. Certainly, therefore, it must have been contemplated that such payments should be made without regard to whether liens were fixed or not.

This case is to be distinguished, we think, from those of which National Bank of Cleburne v. Gulf, C. & S. F. R. Co., 95 Tex. 176, 66 S.W. 203, and the more recent case of Standard Acc. Ins. Co. v. Blythe, supra, are prominent examples. Such cases dealt with the liability of sureties upon bonds. "All the authorities agree", according to Texas Jurisprudence, "that the liability of a surety is *strictissimi juris;* it cannot be extended by implication, construction or presumption beyond the terms of his contract *nor to persons who are not parties thereto."* (Italics ours) 39 Tex.Jur. p. 918, sec. 22. In other words, contracts of sureties are strictly construed. 50 C.J. sec. 132, p. 78. In this State that rule applies alike to compensated and uncompensated sureties. Hess & Skinner Engineering Co. v. Turney, 110 Tex. 148, 216 S.W. 621; Lonergan v. San Antonio Loan & Trust Co., 101 Tex. 63, 77, 104 S.W. 1061, 106 S.W. 876, 22 L.R.A.,N.S., 364, 130 Am.St.Rep. 803.

In the bond cases the language concerning which the question arose, was that of the defeasance provisions in the bonds. The concrete question in Standard Acc. Ins. Co. v. Blythe, supra [130 Tex. 201, 107 S.W.2d 882], was stated to be: whether "the language of the defeasance clause of the bond, *standing alone,* gave a direct right of action to subcontractors, laborers, and materialmen against the surety on the contractor's bond to the owner." (Italics ours). The intent was disclaimed, at least impliedly, to overrule Wm. Cameron & Co. v. American Surety Co., Tex.Com. App., 55 S.W.2d 1032, a case fully supporting our conclusions upon this point. The ground of distinction was the language "shall pay all persons who have contracts directly with the principal for labor and material" even the defeasance clause of the bond involved in the Wm. Cameron &

Co. case being held not to secure any additional benefit to the owner was held sufficient to show the intent to benefit the third parties. In the instant case the language in which the intent to benefit the third persons, if any, appears, is not only not in a defeasance clause of a bond, but just as certainly, by necessary implication, requires the payment to the third persons as did the defeasance clause in the case of Wm. Cameron & Co. v. American Surety Co., supra.

But if it be granted that the contract was not for the benefit of the interveners and that had the Railway Company paid the sum in controversy to the bank, the interveners would, because of their failure to fix liens, have been without remedy, other than an action for debt against the Contractor, we see no escape from the conclusion that the Railway Company, having refused to pay the money to the bank, was under no duty to do so, unless and until the condition subject to which the Railway Company promised to make payment was complied with.

No basis exists for any serious contention that the Railway Company waived the condition. Consent by the Railway Company to the assignment by the Contractor of the moneys to become due under the terms of the contract neither added to, nor detracted from, the obligations and rights of the parties under the contract. The Railway Company had no right to object to the assignment of the contract, in the sense that it was assigned. It attempted to reserve in the contract no such right to object. It would be most unreasonable to hold that by consenting to the assignment, which required no consent, there was an implied novation of the terms of the contract itself.

There being no waiver of the condition upon which payment was promised, we see no reason why the elementary rule should not apply that a conditional promise may not be enforced by the promisee without compliance with the conditions. Concrete applications of this rule under similar facts are to be found in Bridgeport Mach. Co. v. First Nat. Bank, Tex.Civ.App., 44 S.W.2d 414; and American Emp. Ins. Co. v. Roddy, Tex.Com. App., 51 S.W.2d 280. The subject of the enforcement of conditional promises was considered by this court in Shackelford v. Neilon, Tex.Civ.App., 100 S.W.2d 1037,

as appears from the opinion therein by Chief Justice Leslie.

Since the Railway Company has no property right in the fund but is entitled to withhold the payment thereof to the bank until compliance with the condition upon which such payment was promised, and since such condition cannot be met except by payment of the claims of interveners, we are of the opinion that, in the right of the Railway Company, if not in their own right, the interveners were properly permitted to come in and to have their several judgments against the Railway Company in pro tanto discharged and acquittance of the Railway Company's obligation to the bank.

We are of the opinion that the judgment of the court below should be reversed, and this cause remanded for further proceedings in accordance with this opinion, and it is accordingly so ordered.